**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **MARVIN T. BROYHILL, III,** )<br>**Individually and on behalf of the** )<br>**Broyhill Trust, Personal Trust,** )<br>**and the Estate of Audrey Broyhill** )<br> )<br>      **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**BANK OF AMERICA, N.A.** )<br> )<br>      **Defendant.** ) | **Civil Action No: 3:10-cv-00522 (HEH)** |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Bank of America, N.A. ("Bank of America" or "the Bank"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(6), submits this memorandum in support of its Motion to Dismiss Plaintiff's Complaint in its entirety and with prejudice.

### INTRODUCTION

This matter arises out of Bank of America's administration of two trusts and the estate of Audrey E. Broyhill ("Audrey Broyhill") for which Plaintiff allegedly was a beneficiary.  Compl., ¶ 5.[1]  Plaintiff's claims against Bank of America fail on procedural and substantive grounds for numerous reasons.  The Court should dismiss with prejudice all of Plaintiff's claims for the following reasons:

1. Counts I, II, III, IV, and V (which arise out of conduct that occurred in the 1990's) clearly are barred by the applicable statutes of limitations;

2. Plaintiff's request for an equitable accounting (Count VI) is barred by the doctrine of laches;

---

[1] The first five paragraphs in the Complaint are confusingly numbered "1, 2, 1, 2, 1."  For ease of reference, this memorandum references those paragraphs as "1, 2, 3, 4, 5."

3.    Plaintiff lacks standing to the extent he asserts claims "on behalf of the Broyhill Trust, Personal Trust, and the Estate of Audrey Broyhill" or Audrey Broyhill;

4.    Plaintiff has failed to plead sufficient factual allegations to support any plausible claim for relief against the Bank;

5.    Plaintiff's claims are contrary to settled law; and

6.    Plaintiff has failed to plead sufficient conduct or facts entitling him to recover punitive damages.

Hence, all of Plaintiff's claims for breach of fiduciary duty, constructive fraud, negligence, breach of contract, conversion, equitable accounting, and punitive damages must be dismissed with prejudice by the Court.

## STATEMENT OF ALLEGATIONS[2]

### A.    Allegations dating from 1991 to 1997

#### 1.    The Broyhill Trust and the Bank's administration of Audrey Broyhill's financial affairs

The last will and testament of Plaintiff's father established a marital trust for the benefit of Plaintiff's mother, Audrey Broyhill, referred to by the Plaintiff as the "Broyhill Trust." Compl., ¶ 3.  Under the Broyhill Trust, Audrey Broyhill received all income from the trust during her lifetime.  Compl., ¶ 4.  She also was permitted to assign the assets of the trust as she desired.  Compl., ¶ 4.  At some point prior to 1992, Audrey Broyhill designated Bank of America as the sole trustee and the Broyhill Trust's assets were transferred to the Bank.  Compl., ¶¶ 6-7.

In the "early 1990s," Bank of America allegedly "assumed full responsibility for Audrey's financial affairs."  Compl., ¶ 9.  In December 1993, Audrey Broyhill appointed Bank of America as her attorney-in-fact through a durable power of attorney, which nullified an earlier

---

[2] The Statement of Allegations section is based on the allegations contained in the Complaint.  The Bank does not agree with the allegations in the Complaint, but, for the purposes of this Motion and Memorandum, they are accepted as true.

power of attorney held by Plaintiff.  Compl., ¶ 14.  That same day, Audrey Broyhill executed a deed of gift, transferring her home to herself and Deborah Broyhill, Plaintiff's sister.  Compl., ¶ 15.  Around the same time, Plaintiff claims, without any support, that Audrey Broyhill's mental competency began to decline.  Compl., ¶ 9.

### 2.    The Personal Trust and Audrey Broyhill's Amended Will

In December 1993, Audrey Broyhill established a revocable "Personal Trust" for her own benefit.  Compl., ¶¶ 13, 16.  The terms of the Personal Trust have not been set forth in the Complaint.  At the same time (1993), Bank of America allegedly: (1) stopped sending Plaintiff accountings from the Broyhill Trust; (2) began rolling over income from the Broyhill Trust into the Personal Trust; and (3) terminated the $10,000 annual "gifts" that Audrey Broyhill had previously been making to Plaintiff and his siblings.  Compl., ¶¶ 18-20.  From 1994 until Audrey Broyhill's death in April 2003, Plaintiff complained to Bank of America about these alleged breaches of its fiduciary duties.  Compl., ¶ 21.

In January 1996, Audrey Broyhill executed an amended revocable Personal Trust and a new will.  *See* Compl., ¶¶ 22-23, 45.  The amended Personal Trust provided that the Bank would pay off any remaining mortgage indebtedness on Audrey Broyhill's residence at the time of her death.  Compl., ¶ 22.  Under the new will, Bank of America would be named the executor of Audrey Broyhill's estate.  Compl., ¶ 23.  Audrey Broyhill also assigned her entire interest in the Broyhill Trust to the Personal Trust.  *Id.*

### 3.    Plaintiff's allegations against his sister

In January 1997, Audrey Broyhill entered into a nursing home, at which time Deborah Broyhill allegedly began to "loot" Audrey Broyhill's personal property and moved into Audrey Broyhill's home.  Compl., ¶ 27.  Bank of America allegedly made no attempt to collect rent from Deborah Broyhill while she lived in the residence.  *Id.*  It should be noted, however, that,

according to Plaintiff's own allegations, Deborah Broyhill was a joint owner of the property at the time she moved into the property in 1997.  Compl., ¶ 15.

**B.      Allegations dating from 2002 to 2004**

In 2002, Bank of America allegedly "loaned" Plaintiff $100,000 out of his potential share of the Broyhill Trust.  Compl., ¶ 30.  Deborah Broyhill also loaned Plaintiff approximately $100,000 on "multiple occasions."  *Id.*  Strangely, Plaintiff implies that these "loans" to him may not have been "enforceable," and, therefore, the Bank's repayment of the loans out of funds from the Personal Trust in 2004 may have violated the Bank's fiduciary duties.  *Id.*

Also in 2002, Broyhill allegedly obtained an accounting of the Broyhill Trust from the Arlington County Circuit Court (Compl., ¶ 31), which allegedly demonstrated that Bank of America had charged excessive administrative and investment trading fees during 2001, and that the Bank had failed to implement certain investment directives.  Compl., ¶¶ 31-32.  At that time, Plaintiff also discovered that the Bank "was transferring funds from the Broyhill Trust to the Personal Trust."  Compl., ¶ 33.

Audrey Broyhill died on April 4, 2003.  Compl., ¶ 36.  Subsequent to her death, Bank of America provided Plaintiff with copies of her amended will and the Personal Trust.  Compl., ¶ 37.  With the sole exception of the aforementioned repayment of the "personal loans" in January 2004, Compl., ¶ 30, Bank of America is not alleged to have undertaken any action with respect to the assets of the trusts since April 2003, more than five years prior to Plaintiff filing suit in July 2008.  Plaintiff alleges that Bank of America was named executor of the estate of Audrey Broyhill and that the Bank waited at least one year before making any disbursements from the estate.  Compl., ¶ 38.

**C.     Plaintiff's 2008 and 2010 lawsuits against the Bank.**

On July 17, 2008, Plaintiff filed a complaint against Bank of America in the Circuit Court for the City of Richmond, a copy of which is attached hereto as **Exhibit A**.  The 2008 complaint stated the same six counts against the Bank and nearly identical factual allegations to those contained in the instant Complaint.  On July 15, 2009, Plaintiff took a nonsuit of that action, at which time the limitations periods for his claims again began to run.  A copy of Plaintiff's nonsuit is attached hereto as **Exhibit B**.

On January 7, 2010, Plaintiff filed this action *pro se* in the City of Richmond Circuit Court.[3]  Based on the alleged conduct in the Complaint, Plaintiff asserts six causes of action against the Bank: (1) Breach of Fiduciary Duty; (2) Constructive Fraud; (3) Negligence; (4) Breach of Contract; (5) Conversion; and (6) Accounting, Surcharge, and Falsification of the assets of the trusts from 1993 through 2004.  Plaintiff seeks compensatory damages in the amount of $2,500,000, as well as punitive damages and costs and fees.

## STANDARD OF REVIEW

**I.     Rule 12(b)(6) -- Motion to Dismiss**

Bank of America moves for the dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  A motion to dismiss tests the sufficiency of Plaintiff's initial pleading and does not resolve contests surrounding the facts or the merits of a claim.  *See Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  When considering a motion to dismiss, the Court should accept as true all well-pleaded factual allegations and should view the complaint in a light most favorable to Plaintiff.  *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991).  The Court, however, need not accept as true the legal conclusions,

---

[3] Upon information and belief, counsel for Plaintiff entered an appearance in June of this year.  Plaintiff served the Bank with process in July and the Bank timely removed the matter to this Court.

unwarranted inferences, unreasonable conclusions, or arguments asserted in the complaint. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Furthermore, a "pleading that offers 'legal conclusions' of 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Stidham v. Jackson*, 2:07-cv-00028, 2007 U.S. Dist. LEXIS 54032, *13 (W.D. Va. July 26, 2007) (legal conclusions "couched as factual allegations need not be accepted as true"); *Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief").   A claim is "factually plausible" when the claimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In *Iqbal*, the Supreme Court enunciated a "two-step test" for determining whether a complaint survives dismissal.  129 S. Ct. at 1949-50.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Id*. (emphasis added).  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Id*. at 1950.  If any factual allegations remain, the Court should then review them to determine if Plaintiff has stated a plausible claim for relief.  *Id*.

## II.      Federal Rule of Civil Procedure 9(b).

While Rule 8(a) requires that every complaint include "a short and plain statement of the claim" showing that the pleader is "plausibly" entitled to relief, *see Iqbal*, 129 S. Ct. at 1949, Rule 9(b) expressly requires any such party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This requires the following level of substance:

> [T]he pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud.  The rule serves to discourage the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude.  And because "fraud" encompasses a wide variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient information to allow for preparation of a response.

*Scowcroft Group, Inc. v. Toreador Resources Corp.*, 666 F. Supp. 2d 39, 43 (D.D.C. 2009). Thus, to the extent Plaintiff attempts to state a claim for constructive fraud, such allegations are subject to the heightened pleading standard of Rule 9(b).  *Carter Mach. Co. v. Gonzalez*, 1998 U.S. Dist. LEXIS 8106, at *8-9 (W.D. Va. Mar. 27, 1998) ("Carter's claims of fraud and constructive fraud must fail because Carter has not complied with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.").

**ARGUMENT**

I.   **Plaintiff's claims unquestionably are time-barred and must be dismissed.**

    A.   **Plaintiff's legal claims (Counts I through V) are barred by the applicable statutes of limitations and must be dismissed.**

In his Complaint, Plaintiff asserts five legal claims against the Bank: breach of fiduciary duty (Count I, ¶¶ 42-46); constructive fraud (Count II, ¶¶ 47-49); negligence (Count III, ¶¶ 50-53); breach of contract (Count III, ¶¶ 54-56); and conversion (Count V, ¶¶ 57-60).  Based on the allegations in the Complaint, all of the claims are barred by the applicable statutes of limitations and must be dismissed with prejudice.

    1.   **The applicable statutes of limitations for Counts I through V are less than 5 years after the date of accrual.**

The following list provides the applicable statute of limitations for each claim asserted in Counts I through V of Plaintiff's Complaint.  The longest limitations period is five years:

- Breach of fiduciary duty (Count I):  Two years after accrual date. Va. Code § 8.01-248 (providing general two-year statute of limitations for actions where limitations period is not otherwise prescribed by statute); *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995) ("We have ruled repeatedly that under Virginia law a breach of fiduciary duty claim is subject to the . . . limitations period of § 8.01-248.").

- Constructive Fraud (Count II):  Two years after accrual date. *Id.* § 8.01-243(A).

- Negligence (Count III):  An action for negligence resulting in damage to property is governed by a five-year statute of limitations. *Id.* § 8.01-243(B).

- Breach of Contract (Count IV):   Written contracts have a limitations period of five years after accrual; Oral contracts have a limitations period of three years after accrual. *Id.* § 8.01-246.

- Conversion (Count V): Five years after accrual. *Id.* § 8.01-243(B); *see also Bader v. Central Fidelity Bank*, 245 Va. 286, 427 S.E.2d 184, 187 (1993).

2. **Based on the allegations in the Complaint, all of Plaintiff's legal claims accrued more than five years prior to Plaintiff filing suit, and, therefore, the claims must be dismissed with prejudice.**

a. **Plaintiff's cause of action for breach of fiduciary duty (Count I) accrued more than two years before he filed the Complaint.**

A cause of action for breach of fiduciary duty "accrues on the date of the breach, not the date of discovery." *Katz v. Holland & Knight LLP*, 2009 U.S. Dist. LEXIS 10721, at *18 (E.D. Va. Feb. 12, 2009); *Professionals I, Inc. v. Pathak*, 47 Va. Cir. 476, 481 (Fairfax County 1998) ("[I]n Virginia, a cause of action for breach of fiduciary duty accrues on the date of the breach."). According to the allegations in the Complaint, Plaintiff's claim for breach of fiduciary duty accrued no later than January 2004. Therefore, Plaintiff's claim must be dismissed in its entirety with prejudice.

In paragraph 45 of the Complaint, Plaintiff states thirteen "acts and omissions" which allegedly violated Bank of America's fiduciary duties to Plaintiff. Compl., ¶ 45. The date of each of these alleged breaches can be determined based upon information contained in the Complaint. For example, in paragraph 45(a), Plaintiff alleges that the Bank failed "to disclose the inherent conflict of interest in acting as a trustee of the Trusts and personal agent of the Trust grantor" and failed to obtain a proper waiver of the conflict. This allegation implicates Bank of America's role as trustee from the very time that it began to serve as trustee of the trusts. Bank of America began to exercise authority over the Broyhill Trust at some point prior to 1993, *see* Compl., ¶ 6, and it assumed the position of trustee of the Personal Trust in December 1993. Compl., ¶¶ 14, 16. Thus, any claim for breach of fiduciary duty based on the allegations in paragraph 45(a) accrued in 1993 and, therefore, the claim is obviously barred by the two-year statute of limitations.

All of the other alleged breaches of fiduciary duty asserted by Plaintiff are similarly time-barred.  For the Court's convenience, Bank of America attaches hereto as **Exhibit C** a full list of all of Plaintiff's breach of fiduciary claims against the Bank.   **Exhibit C** shows that all of the claims accrued well over two years prior to Plaintiff filing suit.   According to Plaintiff's own allegations, his claims for breach of fiduciary duty against Bank accrued no later than January 2004 (Ex. C, ¶¶ 2, 4-7, 9, 11-13), with the majority of the alleged conduct occurring between 1990 and 2001.  Plaintiff filed this action in July of 2008.  Hence, Plaintiff's claims for breach of fiduciary duty are barred by the two-year statute of limitations and must be dismissed.

> **b.    Plaintiff's cause of action for constructive fraud (Count II) accrued more than two years before he filed the Complaint.**

The two-year statute of limitations for fraud begins to run from the time that the fraud is discovered or when, by the exercise of due diligence, it ought to have been discovered.  Va. Code § 8.01-249(1); *Gilmore v. Basic Indus., Inc.*, 233 Va. 485, 357 S.E.2d 514 (1987).  In his Complaint, Plaintiff asserts the Bank committed four allegedly fraudulently acts:

- The creation of the Personal Trust in 1993/1994 (Compl., ¶ 48);

- The transfer of assets from the Broyhill Trust to the Personal Trust prior to Audrey Broyhill's death in April of 2003 (Compl., ¶ 48);

- The cessation of annual gifts in 1994 (Compl., ¶ 48); and

- The encumbrance of Audrey Broyhill's home by a loan/deed of trust for the benefit of Deborah Broyhill in January 1996.  (Compl., ¶ 48).

As explained below, none of these alleged acts can constitute constructive fraud.  *See infra*, Section III.A.  Moreover, based on his own allegations, Plaintiff either discovered or should have discovered these allegedly fraudulent acts well over two years prior to filing suit in July 2008.  The creation of the Personal Trust occurred in 1993/1994, and the transfer of assets

could not have occurred beyond Audrey Broyhill's death in April 2003, at which time her entire interest in the Broyhill Trust was transferred to the Personal Trust.  Compl., ¶¶ 15-19, 23.  The "cessation of annual gifts" occurred prior to 1994 -- *more than 14 years prior to Plaintiff filing suit*.  Compl., ¶ 21.  The encumbrance of Audrey Broyhill's home by a loan/deed of trust occurred in January 1996.  Compl., ¶¶ 24-27.  Obviously, all of these acts occurred more than two years prior to Plaintiff filing this action.

Furthermore, Plaintiff cannot rely on the tolling provision enumerated in Va. Code § 8.01-249(1) since is evident from Plaintiff's own allegations that he was fully aware, or at least should have been aware through the exercise of due diligence, of Bank of America's activities relative to the trusts from at least the time that he obtained a detailed accounting of the Broyhill Trust "in the fall of 2002," Compl., ¶ 31, and/or when he was presented with a copy of the new will and amended Personal Trust after the death of Audrey Broyhill in April 2003.  Compl., ¶ 37. Thus, Plaintiff's claim for constructive fraud is barred by the two-year statute of limitations and must be dismissed with prejudice.

> **c.    Plaintiff's cause of action for "negligence" (Count III) is barred by the two- and five-year limitation periods for breach of fiduciary duty and negligence.**

Although Plaintiff couches his claim in Count III in terms of "negligence," the count is merely a continuation of his untimely breach of fiduciary duty claim.  To establish a cause of action for negligence, the duty breached must be a "common law" duty.  *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136, 509 S.E.2d 494, 497 (1999).  However, as an alleged beneficiary of the trusts and the estate, the relationship between Bank of America and Plaintiff was governed entirely by written instrument/statute, not common law.  Va. Code § 55-541, *et seq.* (Virginia Uniform Trust Code); Va. Code § 64.1-139 (duties of executor of an estate).  An asserted violation of statutory duties and/or trust provisions cannot give rise to a claim for

common law "negligence."  *See Ju v. Mark*, 2006 U.S. Dist. LEXIS 42263, at *10 n.4 (E.D. Va. June 13, 2006) ("[T]he statutory duties contained within the [Consumer Real Estate Settlement Protection Act] cannot give rise to a negligence claim"); *White v. NCL Am., Inc.*, 2006 U.S. Dist. LEXIS 24756, at *16 (S.D. Fla. Mar. 8, 2006) (dismissing cause of action for "negligence" predicated on the standards imposed by the ADA); *see also Wert v. Jefferds Corp.*, 2009 U.S. App. LEXIS 9750, at *4 (4th Cir. Mar. 26, 2009) ("[A] duty that arises solely from a contract can only provide the basis for a contract claim; it cannot provide the basis for a negligence claim.").   Thus, when a claim for common law negligence is based on the "negligent administration" of a trust or an estate, such a claim is "subsumed" by potential claims for breach of fiduciary duty/breach of trust and must be dismissed.  *Rollins v. Branch Banking & Trust Co. of Va.*, 56 Va. Cir. 147, 150 (Roanoke 2001).

Here, Plaintiff expressly bases his "negligence" claim on the degree of care the Bank allegedly owed the trusts and estate "as trustee, agent and attorney-in-fact and executor." Compl., ¶ 51.  The Complaint's list of allegedly negligent conduct by the Bank confirms that the "negligence" claim is based the Bank's fiduciary status as trustee or alleged executor, rather than the standard of care owed by an "ordinary person."  Compl., ¶ 52 (alleging the Bank breached its duties to "mitigate estate tax liability," purchase and sell suitable securities, "maintain an all cash position," and "raise appropriate defenses to payment" demands).  These alleged duties are owed by fiduciaries, not ordinary persons.  Indeed, in support of his "negligence" claim, Plaintiff alleges the Bank violated provisions of Chapter 1 of Title 26 of the Virginia Code, entitled "Bonds and Liabilities of *Fiduciaries*." (*See* Compl., ¶ 52) (alleging the Bank violated Va. Code §§ 26-5 and -45.3).  Thus, despite Plaintiff's attempt to conceal the claim as one of "negligence," Count III is actually a second claim for breach of fiduciary duty, and, as shown *supra*, the claim

is time-barred by the two-year statute of limitations.  Va. Code § 8.01-248 (two-year statute of limitations).

Furthermore, at least two of the three instances of the allegedly negligent conduct pled by Plaintiff are straightforwardly barred by the five-year statute of limitations for claims for negligent damage to property.  The limitations period under Va. Code § 8.01-243(B) begins to run on the date of injury, even if that injury is not discovered until some later date.  *Id.*; *Bader v. Central Fidelity Bank*, 245 Va. 286, 290, 427 S.E.2d 184, 186 (1993).  Plaintiff's contention that the Bank failed "to make annual gifts or to take any other action to mitigate estate tax liability" accrued no later than 1994, and certainly no later than April 2003.  Compl., ¶ 52.  The Complaint alleges that the annual gifts were "ceased" at some time before 1994, and that Plaintiff complained to Bank of America about the possibility for "substantial estate tax liability" between "1994 and Audrey [Broyhill's] death" in April 2003.  *See* Compl. ¶ 21.  This allegation plainly is barred by the five-year statute of limitations for negligence.

Second, Plaintiff contends that Bank of America engaged in the purchase and sale of "unsuitable securities" and failed to maintain an "all cash position during a period of stock market turmoil."  Compl., ¶ 52.  The allegations in the Complaint relating to Bank of America's investment management of the trust assets all precede Audrey Broyhill's death in April 2003, over five years prior to the institution of the first action against Bank of America on July 17, 2008.  Compl., ¶ 31-34.  Any claim relating to this alleged conduct is, therefore, also untimely.[4]

---

[4] The third allegation of negligence, which relates to Bank of America's failure to "raise appropriate defenses to the payment of Broyhill's alleged indebtedness to Deborah [Broyhill]," Compl., ¶ 52, also is likely untimely under the five-year statute of limitations.  But, due to the fact that this allegation does not state the precise date on which this challenged conduct occurred in January 2004, Bank of America reserves its argument regarding the timeliness of this claim in relation to the five-year limitations period (if necessary) until the facts of this allegation are more fully developed.  Regardless, as stated *supra*, the claim clearly is barred by the two-year period for breach of fiduciary duty claims.

> **d.   Plaintiff's cause of action for breach of contract (Count IV) accrued more than five years before he filed the Complaint.**

Plaintiff has not pled sufficient facts to demonstrate the existence of any contract between himself and the Bank, and, therefore, his breach of contract claim fails.  *See infra*, Section III.C. Furthermore, like Plaintiff's other claims, the contract claim is time-barred.  The three and five-year limitations periods for breach of oral and written contracts "accrue[] on the date of breach, not the date [that] the resulting damage is discovered."  *See, e.g., Browning v. Tiger's Eye Benefits Consulting, Inc.*, 313 Fed. Appx. 656, 664 (4th Cir. 2009).

Here, almost all of the alleged acts and omissions by the Bank occurred more than five years prior to the Plaintiff's filing suit in July 2008, and, therefore, the claim is time-barred.  *See* Ex. C; *supra*, Sections I.A.2.a, b, and c.  The only allegation in the Complaint possibly alleged to have occurred near five years of filing relates to the Bank's repayment of "personal" loans in January 2004.  Compl., ¶ 30.  However, there is no allegation that this particular conduct breached the terms of any oral or written contract.  Indeed, Plaintiff merely alleges that Bank of America failed to exercise sufficient care in determining whether to repay such loans, and he does not allege that this repayment was in any way prohibited by the terms of any contract.  *See* Compl., ¶ 30 (Bank of America paid those loans "without consideration of whether the loans were enforceable.").  Therefore, this particular allegation cannot constitute breach of *contract* (as opposed to breach of fiduciary duty) for the purposes of saving Plaintiff's claim from being time-barred.  All of the other alleged conduct in the Complaint falls well outside of the five-year limitations period.  Thus, Plaintiff's claim for breach of contract is time-barred and must be dismissed with prejudice.

**e.   Plaintiff's cause of action for conversion (Count V) accrued more than five years before he filed the Complaint.**

The five-year statute of limitations for conversion accrues on the date of the conversion itself and not the date of discovery.  Va. Code Ann. § 8.01-243(B); *see also Bader v. Central Fidelity Bank*, 245 Va. 286, 427 S.E.2d 184, 187 (1993); *First Investors Corp., v. Citizens Bank, Inc.*, 757 F. Supp. 687, 690 (W.D.N.C. 1991).   Once again, the alleged acts of "conversion" occurred well over five years before Plaintiff filed this action.  Plaintiff alleges three instances of conversion: (i) Bank of America's transfer of funds from the Broyhill Trust to the Personal Trust; (ii) the Bank's "churning" of investment assets; and (iii) the "excessive and unjustified fees" imposed by the Bank.  Compl., ¶ 59.  According to Plaintiff's own allegations, the transfer of funds allegedly occurred in December 1993 and no later than April 2003.  Compl., ¶¶ 14, 22-23.  The Bank's alleged "churning" of accounts occurred in 2001.  Compl., ¶ 32.  Finally, Plaintiff alleges that the Bank charged "excessive and unjustified fees" in 2001.  Compl., ¶ 31.[5] All of these actions occurred outside of the applicable five-year period for conversion, and, therefore, the claim fails as a matter of law and must be dismissed with prejudice.

**B.   Plaintiff's claim for an equitable accounting (Count VI) is barred by the doctrine of laches.**

In Count VI, "in accordance with § 8.01-31 of the Virginia Code," Plaintiff "requests an accounting of all income and expenses and assets and liabilities of the Trusts from 1993 through 2004."  Compl., ¶ 63.  Plaintiff's requested accounting, however, should be denied for reasons of

---

[5] Once again, only Bank of America's repayment of "personal" loans from the trusts in January 2004 is even potentially alleged to have occurred near five years prior to the date Plaintiff filed suit in July 2008.  Compl., ¶ 30. This action, however, it not alleged by Plaintiff to constitute "conversion."  Moreover, the payoff of loans cannot constitute conversion since there is no allegation (and certainly no facts pleaded) that the Bank retained any of the funds or benefited from the alleged payoff in any way.

laches, due both to his unreasonable delay in making such a request and the resulting prejudice to Bank of America in defending against and/or complying with such a request.[6]

As a settled principle of law, where a party's delay in bringing an action "is attended by the loss of material evidence . . . or by the change of the relation of parties which cannot be restored . . . a court of equity will not lend its aid to the enforcement of an otherwise apparent right. *Courts of equity are not quickened to action by those who have slumbered upon their rights.*" *See, e.g., Dry v. Rice*, 147 Va. 331, 339-40, 137 S.E. 473, 475 (1927) (emphasis added). Accordingly, "[a]ny unexplained acquiescence, with knowledge of the facts, and without valid excuse, for an unreasonable length of time will defeat an action to obtain relief from a judgment." *Id.*

The equitable defense of "laches" arises out of these settled equitable principles. "[T]he presence of laches is ascertained by a balancing of the claimant's delay with the proffered excuse, if any, against the defendant's consequent detriment. The determination demands a weighing of equities. These in turn depend upon an assay of the circumstances." *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 127 (4th Cir. 1966). Consistent with the equitable nature of such an inquiry, "[t]he length of delay constituting laches may be longer or shorter than the analogous statutory period, depending on the individual facts and circumstances of each case." *Potter Instrument Co. v. Storage Technology Corp.*, 1980 U.S. Dist. LEXIS 14348, at *11 (E.D. Va. 1980).

---

[6] The defense of laches applies with equal force to Plaintiff's claims for breach of fiduciary duty, constructive fraud, negligence, breach of contract, and conversion, considered, *supra*. Because those claims plainly are barred by the applicable statues of limitations, however, consideration of the equitable defense of laches is unnecessary. To the extent that any such claims are not deemed time-barred, however, the below analysis applies with equal force to those claims and would also warrant their dismissal.

In this matter, Plaintiff has proffered no justification for his substantial delay in seeking judicial relief, notwithstanding his averred knowledge of the alleged conduct of Bank of America for many years before filing suit in July 2008. Specifically, Plaintiff's own allegations reveal that he has had knowledge of a number of the activities of which he now complains since the early 1990s. *See*, *e.g.*, Compl., ¶ 21 ("Between 1994 and Audrey [Broyhill's] death, [Plaintiff] complained to the Bank about termination of the annual gifts and notified the Bank that the Broyhill Trust faced substantial estate tax liability."). Moreover, Plaintiff *already obtained an accounting in 2002*, whereupon he allegedly became aware of the existence of "excessive fees," Compl., ¶ 31, trust "churning," Compl., ¶ 32, the "transfer of funds from the Broyhill Trust to the Personal Trust," Compl., ¶ 33, and Bank of America's alleged failure to implement certain investment directives. Compl., ¶ 34. Plaintiff (erroneously) asserts that these actions constitute breach of fiduciary, conversion, etc., yet he still did not file any timely action against the Bank.

Additionally, as all of Plaintiff's substantive claims against Bank of America are time-barred, it is difficult to see what constructive purpose any such accounting would accomplish. This additional consideration militates in favor of applying the equitable doctrine of laches to Plaintiff's requested accounting under Va. Code § 8.01-31 ("Accounting in equity"). The Court should not allow Plaintiff to sue now for a *second* accounting -- especially in light of the fact that all of Plaintiff's potential claims are time-barred. Simply put, Plaintiff's request for a second accounting is an exercise in futility and should be dismissed by the Court.

Coupled with this unjustified and unreasonable delay is the inevitable prejudice to Bank of America in having to undertake such an accounting in 2010. Due to the significant passage of time, Bank of America has gone through significant staff turnover. Additionally, the Bank potentially has lost the benefit of certain documentation through its standard document retention/disposal policies. At bottom, Plaintiff's "unexplained acquiescence, with knowledge of

the facts, and without valid excuse, for an unreasonable length of time," *Rice*, 147 Va. at 340, 137 S.E. at 475, warrants the dismissal of his requested accounting.

## II.     Plaintiff lacks standing to sue "on behalf of the Broyhill Trust, Personal Trust, and the Estate of Audrey Broyhill" or on behalf of Audrey Broyhill.

Plaintiff filed this action both "Individually and on behalf of the Broyhill Trust, Personal Trust, and the Estate of Audrey Broyhill."  Although Plaintiff may have standing as a beneficiary of the trusts and the estate, he has no standing to sue on behalf of those legal entities. Furthermore, he does not have standing to sue on behalf of his deceased mother.

Claims asserted on behalf of trusts and estates belong to the trustees and administrators, not beneficiaries.  *Poage v. Bell*, 35 Va. 604, 607 (1837) (ruling only trustee, not beneficiary, had standing to assert claim to recover trust property); 20 *Michie's Juris.*, Wills § 169 ("[A] legatee cannot sue to recover the personal assets of the testator; the right to maintain such suit is in the personal representative alone.").  Thus, to the extent that Plaintiff asserts any of his claims in the Complaint on behalf of the trusts, the estate, or Audrey Broyhill, they must be dismissed with prejudice.

The issue is not merely academic.  Plaintiff expressly asserts some of the claims in the Complaint on behalf of the trusts and estate.  For example, Plaintiff's "negligence" claim is based on the Bank's alleged breaches of duties it "owed the Trusts and the Estate."  Compl., ¶ 51.  Plaintiff asserts his conversion claim on behalf of the trusts because the Bank allegedly "deprive[d] the Trusts . . . of possession and/or their property rights [sic]."  Compl., ¶ 58; *see infra* Section III.D. (Plaintiff lacks standing to assert conversion claim).  Likewise, Plaintiff's allegation that the Bank failed to inform Audrey Broyhill of any alleged conflict of interest (Compl., ¶ 45(a)) constitutes a claim belonging to Plaintiff's deceased mother, not Plaintiff.  This list is by no means exhaustive.  The Complaint is riddled with conclusory allegations asserted on

behalf of the two trusts, the estate, and/or Plaintiff's mother.  Despite Plaintiff's self-appointed status as "watchdog" (Compl., ¶ 5), he lacks standing to assert these claims.  To the extent he attempts to do so, the claims must be dismissed with prejudice.

### III.   Plaintiff's claims must be dismissed because they are insufficiently pleaded and contrary to law.

#### A.   Plaintiff's claim for constructive fraud fails to comply with the pleading requirements of Rule 9(b).

Count II of the Complaint alleges the existence of "constructive fraud." Specifically, Plaintiff bases the claim on allegations that the Bank created the Personal Trust, transferred assets from the Broyhill Trust to the Personal Trust, ceased the annual gifts to Plaintiff, and encumbered the property with a mortgage loan for the benefit of Plaintiff's sister.  Compl., ¶ 48. According to Plaintiff, "[t]hese transactions are presumptively fraudulent." *Id.*

Contrary to Plaintiff's claim, under Virginia law, "fraud, whether actual or constructive, is *never presumed* and must be strictly proved as alleged." *Buck v. Jordan*, 256 Va. 535, 545, 508 S.E.2d 880, 885 (1998) (emphasis added).  Constructive fraud requires the existence of a material fact that was made innocently or negligently, and upon which the plaintiff detrimentally relied. *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (citing *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (1994)). Virginia law does not recognize a claim for constructive fraud based on "omission;" rather, such a claim must concern some affirmative conduct by a defendant. *Allison v. Shapiro & Burson, LLP*, 2009 U.S. Dist. LEXIS 108040, at *13 (W.D. Va. Nov. 19, 2009) (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 833 (4th Cir. 1999)).  In order to survive a motion to dismiss, a Plaintiff must "plead, with the requisite degree of particularity, facts which support all the elements of a cause of action for constructive fraud." *Parkman v. Elam*, 2009 U.S. Dist. LEXIS 21578, at *10 (E.D. Va. Mar. 17, 2009).

Here, Plaintiff does not plead the existence of any affirmative misrepresentation in the Complaint.   Accordingly, Plaintiff must base his claim for constructive fraud on acts of "concealment."  *Allison*, 2009 U.S. Dist. LEXIS at *13.  Such an allegation occurs only once in the Complaint, where it is alleged (in one sentence) that Bank of America "concealed" the transaction which granted it power of attorney over Audrey Broyhill's affairs, and which transferred Audrey Broyhill's home to herself and Deborah Broyhill as joint tenants with common law right of survivorship.[7]   Compl., ¶ 15 ("The Bank concealed both transactions."). Such a conclusory averment, unaccompanied by any factual details, is insufficient to satisfy the heightened pleading requirements of Rule 9(b).  *See, e.g.*, *Breiner v. Stone*, 1997 U.S. App. LEXIS 19236, at *4 (2d Cir. July 25, 1997) ("Because Breiner's complaint offers only the conclusory allegation that Stone 'fraudulently concealed' information from him, Breiner has failed to plead fraud with the 'particularity' that Rule 9(b) requires."); *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003) ("A complaint which contains mere generalities and conclusory allegations of fraud will not suffice to support a claim for fraud.").[8]

Furthermore, Plaintiff has failed to plead any facts whatsoever indicating that he relied on any statements by the Bank and that such reliance was "reasonable and justified." *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999); *Calhoun v. Exxon Corp.*, No. 94-1345, 1995 U.S. App. LEXIS 21668, *7-8 (4th Cir. Aug. 11, 1995) (affirming dismissal of fraud claims because "reliance on false statements must be accompanied by a right to rely"); *Basham v. Gen. Shale Prods. Corp.*, No. 92-1608, 1993 U.S. App. LEXIS 4876, *10-14 (4th Cir.

---

[7] Plaintiff does not allege that Bank of America "concealed" the creation of the Personal Trust, the transfer of assets or the "cessation of annual gifts."  In fact, no credible argument could be asserted that the cessation of annual gifts was somehow concealed from Plaintiff because he was a prior, knowing recipient of such gifts.  Compl., ¶ 19.

[8] Furthermore, any claim of concealment based on the property transfer would be time-barred since Plaintiff knew or should have known about the transfer when his sister began living in the Property in 1997 (Compl., ¶ 27) or, at the very latest, after Audrey Broyhill's death in 2003.

1993) (affirming dismissal of fraud claims because of plaintiffs' "failure to allege any facts establishing *their* reliance on [defendant's] alleged misrepresentations") (emphasis in original); *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) ("Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud . . . and such reliance must be pleaded with particularity."). Indeed, the Complaint is replete with statements recounting Plaintiff's longstanding distrust of banks, indicating his distinct unwillingness to rely on any of Bank of America's representations to him. *See* Compl., ¶ 3. Based on Plaintiff's own allegations, it is simply implausible under the standards set forth in *Twombly* and *Iqbal*, let alone the heightened pleading standards enumerated in Rule 9(b), to believe that he detrimentally relied on any statements by the Bank. Plaintiff has not and cannot plead facts sufficient to show a viable claim for constructive fraud. Therefore, his claim must be dismissed with prejudice.

## B.   Plaintiff's claim for "negligence" is subsumed by his untimely claim for breach of fiduciary duty.

As indicated above (*supra*, Section I.2.c), Plaintiff's "negligence" claim is, in reality, a claim for breach of fiduciary duty. Because Plaintiff's claims for breach of fiduciary duty are time-barred, his claim for "negligence" necessarily fails and must be dismissed with prejudice. Furthermore, to the extent that Plaintiff has attempted to plead a claim for "negligence," the claim must be dismissed since Plaintiff has not pleaded any facts indicated the Bank breached any common law duty.

## C.   Plaintiff's claim for breach of contract fails as a matter of law and is insufficiently pleaded.

In Count IV of the Complaint for "breach of contract," Plaintiff contends that Bank of America's "actions, as detailed above, constitute a breach of the Broyhill Trust and Personal Trust agreements." Compl., ¶ 55. (As pled, this allegation implicates only the trusts and not the estate

of Audrey Broyhill.) However, Plaintiff does not allege how, as a supposed beneficiary of the revocable trusts, he stood in privity of contract with Bank of America sufficient to state such a claim. Indeed, it is settled law that "[a] trust instrument is not a contract" and is not susceptible to "breach" for that reason. *Rollins*, 56 Va. Cir. at 151; *see also* Va. Code § 55-550.01(A) ("A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."). Thus, Plaintiff's claim for "breach of contract" fails as a matter of law and must be dismissed with prejudice.

To the extent Plaintiff attempts to allege breach of contract, he has failed to state any factual allegations showing the existence of any contract between Plaintiff and the Bank or any breach by the Bank. Plaintiff has failed to identify any provisions of any contract that Bank of America is alleged to have breached. There is no mention of the terms of any such contract in the Complaint, nor did Plaintiff attach any copies of any contract to the Complaint. Simply asserting the existence of a "breach of contract" without setting forth the provisions of the contracts alleged to have been breached is insufficient to meet the pleading requirements of Rule 8(a). *Ruffolo v. Oppenheimer & Co.*, 1991 U.S. Dist. LEXIS 1485, at *5 (S.D.N.Y. Feb. 5, 1991) ("With respect to the contract claim, plaintiff's failure to plead the terms of the agreement alleged to have been breached, renders the claim defective."). And, Plaintiff cannot base his breach of contract claim on an alleged violation of the trust instruments. Therefore, to the extent he attempts to allege the existence or breach of any contract, he has failed to so pursuant to the Rule 8(a).

**D.    Plaintiff Lacks Standing to State a Claim for Conversion.**

In Count V, Plaintiff alleges that Bank of America "wrongfully exercised and assumed authority over the assets of the Broyhill Trust and the Personal Trust, depriving the Trusts, respectively, of possession and/or their property rights. The Bank wrongfully exercised

dominion and control over the Trusts' property in denial of, and inconsistent with, the Trusts' rights and interests.  The Bank's actions in transferring funds from the Broyhill Trust to the Personal Trust, in churning the accounts, and taking excessive and unjustified fees constitutes conversion. "  Compl., ¶¶ 58-59.  Thus, under this count, Plaintiff challenges Bank of America's actions relative to the administration of the trusts.  *Id.*

Under Virginia law, "[a] person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving *the owner* of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, *the owner's rights*."  *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666 (2001) (emphases added).  As a contingent beneficiary of the trusts at the time that the challenged conduct occurred, however, Plaintiff lacks standing to state a claim for conversion.

To maintain an action for conversion, "a plaintiff must have actual possession of the property or a right to immediately take possession of the property."  *Gillespie v. Seymour*, 14 Kan. App. 2d 563, 572 (Kan. Ct. App. 1990) (citing 18 Am. Jur. 2d, Conversion § 76, p. 199). "An interest entitling a plaintiff to possession of the property at some time in the future is not sufficient to maintain an action for conversion."  *Id*.  Here, Plaintiff alleges that his "father's will permitted Audrey [Broyhill] to assign the assets of the [Broyhill] Trust upon her death.  In the absence of such an assignment, the [Broyhill] Trust assets were to be equally divided between Audrey [Broyhill's] then living children."  Compl., ¶ 4.  Moreover, the Personal Trust was a revocable trust.  Compl., ¶ 45(e).  Thus, Plaintiff's interest in the trusts was entirely contingent, and he had no immediate claim to the trust assets at the time that the alleged conversion occurred.  Therefore, Plaintiff lacks standing to assert a claim for conversion and the claim must be dismissed.  *See, e.g., Safeco Ins. Co. v. Wheaton Bank & Trust Co.*, 2008 U.S. Dist. LEXIS 5513, at *8-9 (N.D. Ill. Jan. 24, 2008) ("Safeco cannot sue the Bank for conversion based on the

subcontractors' alleged equitable interest in ICTC's deposits, because beneficiaries do not have a present and unconditional right to possess bank deposits made by a trustee, even when those deposits include trust assets."); *Gillespie*, 14 Kan. App. 2d at 572 (Even after their receipt of the trust assets, "the Beneficiaries lack[ed] standing to maintain a conversion action because they possessed a future interest in the trust but had no right to immediate possession of the trust funds" at the time that the alleged conversion occurred.).

## IV.    Plaintiff has failed to plead sufficient conduct and facts to recover punitive damages.

Plaintiff has requested an award of punitive damages.  In Virginia, a plaintiff may recover punitive damages only if the alleged wrongful conduct was committed with malice or with a degree of recklessness or negligence that amounts to a "conscious disregard of the rights of others."  *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 276 (1967); *see also Philip Morris Inc. v. Emerson*, 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988) ("Because punitive damages are in the nature of a penalty, they should be awarded only in the cases of the most egregious conduct.").

Principally, Plaintiff alleges that Bank of America failed to provide documentation of the trust assets upon his request, and that Bank of America failed to prudently manage the trusts. Tellingly, Plaintiff has not stated a cause of action for actual fraud, and has instead pled only constructive fraud, which respects only "negligent or innocent" actions.  *See Mortarino*, 251 Va. at 295, 467 S.E.2d at 782.  In alleging that Bank of America mismanaged trust assets and failed to provide proper accounting of its activities, the allegations in the Complaint do not allege the type of wanton or malicious conduct that would make this an "egregious" case supporting an award for punitive damages.

Additionally, to the extent that Plaintiff's tort claims must be dismissed for the reasons set forth above, Plaintiff is without a viable basis to seek punitive damages. *Mar Tech Mech. , Ltd. v. Chianelli Bldg. Corp.*, 54 Va. Cir. 569, 577 (Norfolk 2001) ("Because Plaintiff's fraud and conversion claims are dismissed, Plaintiff is left to assert only those claims arising out of his breach of contract allegations.  Since punitive damages and attorney's fees are not recoverable in breach of contract actions, Defendants' demurrer to Plaintiff's corresponding claim is sustained.") (citing *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983)).  Therefore, Plaintiff's request for punitive damages should be dismissed.

## CONCLUSION

WHEREFORE, Defendant, Bank of America, N.A., respectfully requests that the Court enter an Order: (1) dismissing each and every claim or cause of action asserted in the Complaint with prejudice; (2) striking Plaintiff's demand for punitive damages; (3) awarding Bank of America its costs and expenses incurred herein; and (4) awarding Bank of America such further relief as the Court deems appropriate.

**BANK OF AMERICA, N.A.**


By:   /s/ Jon S. Hubbard
Of Counsel

David N. Anthony (VSB# 31696)
Jon S. Hubbard (VSB #71089)
Timothy J. St. George (VSB #77349)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1200 (telephone)
(804) 698-1339 (facsimile)
david.anthony@troutmansanders.com
jon.hubbard@troutmansanders.com
tim.stgeorge@troutmansanders.com

*Counsel for Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of August, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that a true and correct copy of the foregoing was thereby sent via electronic mail to the following:

Steven Scott Biss
P.O. Box 592
Richmond, VA 23219
804-861-8733
Fax: 202-318-4098
Email: stevenbiss@earthlink.net

*Counsel for Marvin T. Broyhill, III*

_____/s/ Jon S. Hubbard_____
David N. Anthony (VSB# 31696)
Jon S. Hubbard (VSB #71089)
Timothy J. St. George (VSB #77349)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1200 (telephone)
(804) 698-1339 (facsimile)
david.anthony@troutmansanders.com
jon.hubbard@troutmansanders.com
tim.stgeorge@troutmansanders.com

*Counsel for Bank of America, N.A.*