IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MARVIN T. BROYHILL, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:10cv905 |
| | ) | |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Marvin T. Broyhill, III ("Broyhill"), by counsel, submits the following Response and Memorandum in Opposition to the motion to dismiss filed by defendant, Bank of America, N.A. ("Bank").

## I.   Statement of the Case

On July 17, 2008, Broyhill originally commenced this action by filing his complaint in the Circuit Court for the City of Richmond.  Broyhill nonsuited the case, and re-filed his action *pro se*[1] on January 7, 2010 within the six-month period prescribed by § 8.01-229.E.3 of the Virginia Code.  In his Complaint, Broyhill alleges six (6) claims against the Bank:   Breach of Fiduciary Duty (Count I), Constructive Fraud (Count II), Negligence (Count III), Breach of Contract (Count IV), Conversion (Count VI), and Accounting, Surcharge and Falsification (Count VI).

---

[1]     The first five (5) paragraphs of the Complaint are mis-numbered.  For ease of reference, Plaintiff's Response and Memorandum in Opposition will also refer to those paragraphs as "1. 2, 3, 4 and 5".

Broyhill's father died in 1969, leaving a considerable estate. During his life, Broyhill's father constantly expressed a distrust of banks: he oft-repeated the maxim that banks "rob widows and orphans". Broyhill's father made Broyhill promise to oversee and protect the financial interests of Broyhill's mother and minor siblings. When Broyhill's father died, a trust (life estate) was established under his last will and testament for the benefit of his wife, Audrey E. Broyhill ("Audrey"). *Complaint, ¶ 3.* Under the terms of the trust for Audrey (hereinafter, the "Broyhill Trust"), Audrey was to receive all income from the trust during her lifetime. Broyhill's father's will permitted Audrey to assign the assets of the Broyhill Trust upon her death. In the absence of such an assignment, the Trust assets were to be equally divided between Audrey's then living children. *Complaint, ¶ 4*

From the early 1990s through at least November 2004, *Complaint, ¶¶ 6, 7, 8, 14, 15, 16, 22, 23, 27, 30, 31, 32, 36, 37, 38, 39, 63,* Bank of America acted in multiple capacities as trustee, attorney-in-fact, and finally trustee/executor under a series of interrelated trusts and wills, of which Broyhill was a remainder beneficiary and direct beneficiary. *Complaint, ¶¶ 3, 4, 43, 44.* The Bank had a continuous fiduciary relationship with Broyhill, Audrey, the Broyhill Trust, the Personal Trust, Broyhill's sister, and the Estate of Audrey Broyhill. *Id., ¶ 43.*[2]

During the early 1990s, Audrey's mental facilities deteriorated rapidly. She claimed that ghosts came out of the walls at night; she claimed to have conversations

---

[2]    Attached hereto as *Exhibit "A", "B", "C", "D", "E" and "F"* are true copies of documents obtained by Broyhill and received by Broyhill from the Bank and Commissioner of Accounts that further evidence that the Bank had a continuous relationship with Broyhill, Audrey, the Broyhill Trust, the Personal Trust, Broyhill's sister, and the Estate of Audrey Broyhill through at least November 2004.

with people who had been dead for many years; etc.  Deborah had a fence constructed at Audrey's home to keep Audrey from wandering off through the neighborhood.  The Bank provided Audrey with full-time caregivers and the Bank assumed full responsibility for Audrey's financial affairs. *Complaint, ¶ 9.*  In 1993, the Bank terminated the $10,000 annual gifts that Audrey had been making because the Bank anticipated heavy medical expenses for Audrey.   Shortly after August 6, 1993, Audrey visited Broyhill in Petersburg.  Broyhill was shocked by her condition.  Audrey, who had been raised in Petersburg, did not know where she was.  She did not even recognize Broyhill's children – her only grandchildren. *Complaint, ¶ 11.*   Audrey remained incompetent and incapacitated until her death   Audrey was incompetent long before December 1993. *Complaint, ¶¶ 14, 19.*[3]

Broyhill alleges that a durable power of attorney, a deed of gift to Deborah, the Personal Trust and a revised will were all obtained from his mother, Audrey, at a time when Audrey was incompetent, *Complaint, ¶¶ 14, 15, 16, 22, 23*, and that the Bank, in breach of its fiduciary and contractual duties, used these instruments over the years and after Audrey's death in 2003, to unlawfully deplete the Broyhill Trust and injure Broyhill's remainder interest in the assets of the Broyhill Trust. *Id., ¶¶ 3, 4, 12, 13, 15,*

---

[3]    In its memorandum, p. 3, the Bank claims that Broyhill's allegations of Audrey's mental incompetency are "without any support".  Contrary to the Bank's assertion, the Complaint details numerous facts which support Broyhill's claim, including specific actions taken by the Bank and Deborah.

*45-46.*[4]

Broyhill filed this action, individually and in his capacity as a beneficiary of the Broyhill Trust, the Personal Trust, and the Estate of Audrey,[5] within five (5) years after the Bank terminated the Broyhill Trust and distributed its remaining assets in 2004, *Exhibits "C", D" and "E"*, and within five (5) years of the time Broyhill sustained injury as a result of Bank's actions. *§ 55-550.05.C* (five year statute of limitations for claims against trustee for breach of trust). Broyhill filed suit to surcharge and falsify the Bank's accountings well within ten (10) years of the dates when the Bank filed and settled the accounts and the accounts were finally confirmed. *See, e.g., Complaint, ¶¶ 31, 41, 62, 63, 64*; *Exhibits "A", "B", "C", "F" and "G"*; *§ 8.01-245.B* (ten year statute of limitations).

The Bank removed the case to this Court, and moved to dismiss on the grounds (a) that Counts I, II, II, IV and V of Broyhill's Complaint are barred by the statute of limitations; (b) that Count VI is barred by the doctrine of laches; (c) that Broyhill lacks standing; and (d) that Broyhill has failed to plea sufficient facts to support his claims.

---

[4]  While Broyhill had a remainder interest in the assets of the Broyhill Trust created by his father, that interest was subject to divestment if his mother, Audrey, elected to assign the assets of the Trust upon her death. *Complaint, ¶¶ 3-4*. In this case, Broyhill claims that the assignment of Audrey's interest in the Broyhill Trust to the Personal Trust orchestrated by the Bank in January 1996 was invalid because Audrey was incompetent. Broyhill claims that the assets of the Broyhill Trust were not assigned at the time of Audrey's death, and, therefore, the assets were to be divided equally between Broyhill and Deborah. *See Jones v. Hill*, 267 Va. 708, 712-713, 594 S.E.2d 913 (2004) ("While Vaiden Jones had a vested remainder interest in the property left by his father, that interest was subject to divestment if his mother, Annie Jones, elected to dispose of the property during her life. However, Vaiden Jones's interest in the parcel was not divested because Annie Jones had not disposed of it at the time of her death.").

[5]  As the Bank's conduct demonstrates, a breaching trustee has no interest in filing suit against itself. The Bank obstructed Broyhill's efforts to obtain copies of the 1996 Personal Trust agreement, and did not provide a copy until May 2003. Thereafter, the Bank refused to take any action to protect the rights and interests of the Broyhill Trust and/or Audrey's Estate. *Complaint, ¶¶ 25, 28, 29, 38, 39, 40*.

## II.  **Principles of Law and Analysis**

### A.  *Statute of Limitations*

"In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of … damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under § … 8.01-249 …or other statute." *§ 8.01-230; see Bethel Inv. Co. v. City of Hampton*, 272 Va. 765, 767-768 636 S.E.2d 466 (2006) (where statute of limitations is at issue, party is entitled to jury trial on issue of when statute began to run).

Broyhill disputes that his claims are barred by any applicable statute of limitations.[6]

The Bank's statute of limitations defense should be rejected for the following reasons:

---

[6]     Broyhill agrees that he was on notice of the possibility of fraudulent conduct by the Bank when he obtained the accounting in the fall of 2002. *Complaint, ¶ 31*.  Accordingly, Broyhill will voluntarily dismiss his claim for Constructive Fraud (Count II).

First, the Bank had a continuing fiduciary relationship with Broyhill,[7] Audrey,

and the Broyhill Trust, of which Broyhill was a remainder beneficiary.  The fiduciary

relationship did not terminate until November 2004.   The Bank's engagement as

trustee/agent/executor continued unabated until the Bank distributed what was left of the

assets of the Broyhill Trust – a Trust set up by Broyhill's father in 1969.  Because of the

continuing fiduciary relationship of trust and confidence between the Bank and Broyhill

and Audrey and the Broyhill Trust and the Personal Trust and the Estate of Audrey

Broyhill, the statute of limitations did not begin to run until the relationship ended.  *See,*

*e.g., Crestar Bank v. Williams*, 250 Va. 198, 207, 462 S.E.2d 333 (1995) ("The investors'

suits were not based upon demand notes but upon the continuing relationship between

---

[7] A fiduciary relationship exists when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.  Whether a fiduciary relationship exists is an issue of fact for the Jury. *Banks v. Mario Industries of Virginia, Inc.*, 274 Va. 438, 452-453, 650 S.E.2d 687 (2007); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 446-447, 318 S.E.2d 592 (1984).  Broyhill alleges that the Bank was in a fiduciary relationship with Broyhill because it held, managed and invested the assets of the Broyhill Trust, in which Broyhill had a remainder interest and was a beneficiary. *See* § 26-45.3 (trustee who invests and manages trust assets owes fiduciary duty to the beneficiaries to comply with prudent investor rule); *see also Marcus, Santoro & Kozak. PC v. Hung-Lin Wu*, 274 Va. 743, 751, 652 S.E.2d 777 (2007) ("The Firms were in a fiduciary relationship to Tseng, holding his property (the funds he tendered to the Firms) as the corpus of a trust of which Tseng was the beneficiary.").  Broyhill's relationship with Audrey was much more than a "parent-child connection.  It was a fiduciary relationship. *See, e.g., Oden v. Salch*, 237 Va. 525, 534, 329 S.E.2d 346 (1989) ("Evidence of advice and counsel in business matters involving a certain degree of trust is necessary to show a fiduciary relationship.") (citations omitted).  The Bank knew that Broyhill acted as "watchdog" for Audrey and the Broyhill Trust.  Broyhill attended Trust meetings and provided advice and guidance to Audrey.  For years, even after Audrey's death in 2003, Broyhill demanded accountings and information on behalf of Audrey and the Broyhill Trust. *Complaint, ¶¶ 5, 7, 27, 28, 35, 39, 40.*  Because Broyhill was Audrey's agent, the Bank owed Broyhill the same fiduciary duties as it owed to Audrey.  Broyhill was the only person looking out for his Mother and the Broyhill Trust.  Moreover, the Bank acted as Broyhill's agent in making and repaying "loans" to Broyhill and Deborah. *Id., ¶ 30.*

themselves and Williams as their fiduciary in the investment of their funds … This

continuing relationship did not end until Williams fled the Commonwealth and ceased to

render monthly statements of account … the suits clearly were timely.") (citing *Keller v.*

*Denny*, 232 Va. 512, 516-19, 352 S.E.2d 327 (1987)); *Wood v. Carwile*, 231 Va. 320, 343

S.E.2d 346 (1986) ("where there is an undertaking which requires a continuation of

services, the statute of limitations does not begin to run until termination of the

undertaking.") (citations omitted); *see In re James River Coal Co.*, 360 B.R. 139, 160

(Bankr. E.D. Va. 2007) (the actions about which the trustee complains "comprise one

unified transaction; he argues that therefore, regardless of the limitation period, it is

premature to address the issue until the facts are developed further.  The Court agrees

with the Trustee's argument.  It would be premature for the Court to deprive the Trustee

of any of the asserted causes of action unless it is clear on the face of the Amended

Complaint that the count is barred by the statute of limitations … A statute of limitations

cannot be applied in this case until the nature and timing of the transactions pertaining to

it are clarified.  It is impossible to tell without actual proof whether there existed a single

unified fraudulent scheme or whether the statutory period was tolled, and the Court must

take the allegations of the plaintiff as true.  Therefore, the statute of limitations may not

be used at this phase of the case to defeat any of the Trustee's claims.").

Broyhill's claims, filed within five (5) years of end of the continuing fiduciary

relationship, are timely.

Second, even without application of the continuous undertaking rule, Broyhill can

sue for the damages that occurred in the five-year period directly preceding the filing of

his original lawsuit on July 17, 2008.[8]   The Bank's conduct injured Broyhill's interest as

a remainder beneficiary under the Broyhill Trust, *Complaint, ¶¶ 1-2, 44*; <u>*Exhibit "F"*</u>, p.

1, which is injury to Broyhill's "property" under § 8.01-243.B.[9]   Because this is an action

for injury to property, the statute of limitations for Counts I, III, IV and V is five (5)

years. *See, e.g., Bader v. Central Fidelity Bank*, 245 Va. 286, 290, 427 S.E.2d 184 (1993)

("the gist of the cause of action asserted by Mrs. Bader is that Central Fidelity wrongfully

exercised authority over her funds and, thus, she was deprived of possession and use of

those monies … Central Fidelity's alleged act of conversion was not aimed at Mrs.

Bader's person, but was directed upon her property.   Accordingly, we hold that the five-

year period of limitations under § 8.01-243(B) is applicable to Mrs. Bader's conversion

claim against Central Fidelity.") (citing *Vines v. Branch*, 244 Va. 185, 190, 418 S.E.2d

890 (1992) (conduct directed at property constitutes an injury to property).

 The five-year limitations periods applicable to Counts I, III, IV and V began to

run when the assets of the Broyhill Trust were distributed by the Bank in January 2004.

Broyhill's loss of his interest as a remainder beneficiary occurred at that time.   Under the

---

[8] The statutes of limitation for Broyhill's claims was tolled during the pendency of Broyhill's original action, and, because he complied with § 8.01-229.E, the statutes remain tolled.

[9] A "remainder interest" is an "estate".   It is a property right that can be sold or inherited or attached. *§ 55-545.01* ("the court may authorize a creditor or assignee of the beneficiary to reach the beneficiary's interest by attachment of present or future distributions to or for the benefit of the beneficiary or other means"); *Jones v. Hill*, 267 Va. 708, 712-713, 594 S.E.2d 913 (2004).   Although Broyhill's remainder interest vested upon Audrey's death, *Harbour v. SunTrust Bank*, 278 Va. 514, 685 S.E.2d 838 (2009), Broyhill did not suffer injury until January 2004, when the Bank failed to disburse the assets of the Broyhill Trust equally to Broyhill and Deborah. *See Complaint, ¶ 38* (After Audrey's death, the Bank advised Broyhill in writing that it would not make ay disbursements for at least one (1) year); <u>*Exhibit "F"*</u>, Bank Letter of 05/21/2003, p. 2 ("… we do not intend to make any distributions prior to … January 2004.").

terms of the original Broyhill Trust, upon Audrey's death the Trust assets were to be divided equally between Audrey's then living children.  In December 1993, the Bank unlawfully caused the incompetent Audrey to deed her valuable home to herself and Deborah. *Complaint, ¶ 15*.  When Audrey died in 2003, that home, valued at $1,100,000 on the Estate tax return filed by the Bank, transferred outright to Deborah. *Exhibit "B"*, pp. 3 and 4, Schedule E of Return (from Audrey's Estate, $1,623,367 was distributed to Deborah, whereas only $523,36 was distributed to Broyhill)  On May 23, 2003, the Bank distributed an additional $432,577,89 to or for Deborah's benefit, when it paid off the entire mortgage on Audrey's home. *Exhibit "A"*, p. 24 of the Account Statement; *Complaint, ¶ 24* (when the Bank paid of the entire mortgage, Deborah got Audrey's house free and clear and "Broyhill lost an amount equal to one-half the value of Audrey's home.").   On January 16, 2004, the Bank unlawfully distributed an additional $102,316.68 of Broyhill's funds to Deborah, when it unilaterally decided to pay off a "loan" that the Bank claimed was still owed to Deborah. *Exhibit "C'*, p. 6 of 11.  Finally, on January 29, 2004, the Bank delivered $271,301.83 worth of securities to Deborah. *Id.*, pp. 9 of 11 and 10 of 11.[10]

In January 2004, as plead in Broyhill's Complaint and as is shown by the evidence, the Bank distributed more funds to Deborah than she was entitled to under the Broyhill Trust.  Broyhill's claims arising from the Bank's breach in January 2004 are timely. *See, e.g., American Physical Therapy Ass'n. v. Federation of Sate Boards of*

---

[10]      In addition to the unlawful disbursements to Deborah, in Count VI Broyhill seeks to surcharge exorbitant fees charged by the Bank, such as the $56,221 withdrawn from the Broyhill Trust on July 30, 2004. *Exhibit "D"*, p. 5 of 7; *see also Complaint, ¶¶ 31 and 32* (Broyhill seeks to surcharge the exorbitant and unjustified fees taken by the Bank as reflected on the 2001 accounting, a part of which is attached as *Exhibit "G"*).

*Physical Therapy*, 271 Va. 481, 484-485, 628 S.E.2d 928 (2006) ("the Federation's actions constituted distinct, separate breaches of the Agreement, and the APTA is entitled to bring its claims for those breaches of contract that occurred in the five years preceding its filing of this suit.") (citing *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 239, 360 S.E.2d 841 (1987) ("If the wrongful act is of a permanent nature and one that produces "all the damage which can ever result from it, [then] the entire damages must be recovered in one action," and the statute of limitations begins to run from the date of the wrongful act … Conversely, when wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action … In the latter situation, a plaintiff's "right of recovery ... is limited by the statute to the damages sustained during the five years immediately preceding the institution of [the] suit") (quotations and citations omitted))

Third, the statute of limitations applicable to Count VI is ten (10) years. Count VI survives under any circumstance.

Finally, under the circumstances of this case, the Bank ought to be estopped by its conduct to assert the statute of limitations. The Bank refused to produce to the Personal Trust and Audrey's revised will to Broyhill until months after Audrey's death. The Bank obfuscated and obstructed Broyhill at every turn. *Complaint, ¶¶ 38-40; see, e.g., American Mutual Liability Insurance Co. v. Hamilton*, 145 Va. 391, 407, 135 S.E. 21 (1926) (when one person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely on those statements, and who does rely on them in good faith, to believe in the existence of the state of facts with which the a compatible, and at upon that belief, the former will not be allowed to assert, as

against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby); *City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir. 1977) (defendant's various unsuccessful remedial/repair measures, after delivery of defective machinery, served to equitably toll the statute of limitations).

**B.**      ***Laches***

The Virginia Supreme Court defines "laches" as "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." *Princess Anne Hills v. Susan Constant Real Est.*, 243 Va. 53, 58, 413 S.E.2d 599 (1992); *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 47, 353 S.E.2d 727 (1987); *Swofford v. Bowles*, 2004 WL 3142307 * 2 (Albemarle Cir. 2004) ("Laches is sustainable only on proof of both of two elements: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *See Mogavero v. McLucas*, 543 F.2d 1081 (4th Cir. 1976); *see also Strickland v. Ayers*, 159 Va. 311[, 165 S.E. 387] (1932) (holding that it is not mere lapse of time, but a change of situation during neglectful repose which renders it inequitable to afford relief). The general definition regarding the doctrine's essential element is prevalent throughout Virginia law: "[t]he party asserting the defense of laches must show the prejudice resulting from the delay, otherwise the essential basis for the application of the doctrine of laches is nonexistent." 7A M.J. Equity § 32.   Thus, without further alleging that Plaintiff's delay caused prejudice to the Defendant by way of death of parties, loss of evidence, disadvantage in establishing a claimed right or defense, or change of position by Defendant where he cannot be restored to his present state, the doctrine of laches will

not apply.  Even if Plaintiff exercised a lack of diligence in bringing this independent

cause of action for fraud on the court because of her failure to inquire into the public

judgment on the note payment, Defendant has not maintained by any means how this

delay works a prejudice against him.  For these reasons, the Court will not sustain the

Demurrer based on laches.").

      First, laches does not apply to Broyhill's claim to surcharge and falsify the Bank's

accountings.  The claim, as indicated in the Complaint, ¶ 41 and above, is subject to a

ten-year statute of limitations. *Lister v. Virginia Nat. Bank*, 209 Va. 739, 741-742, 167

S.E.2d 346 (1969).

      Second, "[i]t is well settled that so long as there has been no denial or repudiation

of an express and continuing trust, such as we have here, neither the statute of limitations

nor laches will constitute a bar to an account or other proper relief to which the *cestui que*

*trust* is entitled." *Broaddus v. Gresham*, 181 Va. 725, 26 S.E.2d 33 (1943) (numerous

citations omitted).  In this case, the Bank did not deny or repudiate the Broyhill Trust.

The Bank breached the terms of the Broyhill Trust in January 2004 and violated its

fiduciary duties, all of which caused damage to Broyhill's vested remainder interest.

Under *Broaddus v. Gresham*, neither the statute of limitations nor laches constitutes a bar

to Broyhill's claims as a matter of law.

      Third, Broyhill filed suit within the statute of limitations, and "equity" follows

the law.  Further, the Bank cannot show any prejudice.  In its memorandum, p. 17, the

Bank suggests that it "potentially has lost the benefit of certain documentation through its

standard document retention/disposal policies."  This is sheer speculation.  In truth,

Audrey's incompetence will be well-documented by the Bank's own records, *see*

*Complaint, ¶ 9* (the Bank provided Audrey with full-time care givers and the Bank assumed full responsibility for Audrey's financial affairs), and by the medical and nursing home records. *See Complaint, ¶ 27*.   The Bank's records, Bank accountings filed with the Arlington Circuit Court, and other documents are all preserved.  Bank officials, Deborah, and other witnesses are available for deposition.

The Court should deny the Bank's plea of laches without more.  To reiterate, Count VI is timely under the ten-year statute of limitations, *§ 8.01-245*, and Broyhill's request for an accounting from this fiduciary is proper.  Broyhill did wait a number of years before filing to surcharge and falsify the Bank's accountings.  However, the Virginia General Assembly chose to allow such suits to proceed if commenced within ten (10) years of confirmation of the accounts.  The Bank, no doubt, lobbied for that generous ten year limitations period.  The Bank's motion as to Count VI should be dismissed without more.

**C.**     **Punitive Damages**

Broyhill's Complaint alleges numerous facts that, if accepted as true, would support his claim that the Bank acted with reckless disregard for Broyhill's rights and interests under the Broyhill Trust, too advantage of his mother's incompetence, engaged in self-dealing and flagrant disregard of the Broyhill Trust.

Whenever a plaintiff pleads and proves an intentional tort, "Virginia law permits the trier of fact to award punitive damages." *See, e.g., Koffman v. Garnett*, 265 Va. 12, 17 fn*, 574 S.E.2d 258 (2003); *Shaw v. Titan Corp.*, 255 Va. 535, 545, 498 S.E.2d 696 (1988).

Here, Broyhill has pled the intentional torts of Breach of Fiduciary Duty and Conversion.  Upon proof of these intentional torts claims, the Jury could award punitive damages.  It is wholly premature to dismiss Broyhill's punitive damage claim at this stage of the case.

**D.**     **Broyhill Has Sufficiently Pled His Claims**

As a general rule of pleading, Rule 8(a)(2) FRCP counsels that a complaint is sufficient if it contains a "short and plain statement" of the claim "showing that the pleader is entitled to relief."  Pleadings should be "simple, concise and direct."  Pleadings must be construed so as to do justice. *FRCP 8(d)(1), (e)*.

The facts of this case are somewhat complex.  There is no doubt that more detail could be supplied by Broyhill.  However, Broyhill's Complaint advises the Bank of the instruments and contracts at issue in this action, the tortious conduct and breaches of trust by the Bank both before and after Audrey's death, the provision of the Broyhill Trust that was breached (failure to distribute the Trust assets equally upon Audrey's death), the basis of Broyhill's claim to one-half of the Trust assets as a remainder beneficiary, and the damages that Broyhill believes will be shown by the evidence. *See § 55-550.02* (A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of: (1) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred, or (2) the profit the trustee made by reason of the breach); *§ 55-550.04* (Attorney's Fees).  The Bank certainly knows enough about Broyhill's claims that it can answer.  Any clarification or evidence to support the Bank's defenses can be developed in discovery.

Broyhill notes that the Bank seems to pick on the names given by Broyhill to his claims.  For instance, in its memorandum, pp. 21-22, the Bank seems to suggest that Broyhill should have labeled Count IV Breach of "Trust", instead of Breach of "Contract".  The Bank also suggests, p. 21, that Broyhill's Negligence claim is "in reality, a claim for breach of fiduciary duty".[11]  If necessary, these labels can be amended.  That does not change the substance of Broyhill's claims.  As regards Broyhill's conversion claim, upon Audrey's death Broyhill had a vested remainder interest in the Trust assets.  He clearly and indisputably had an immediate possessory right to his "estate".  That "estate" was his property.  The Bank unlawfully transferred all or part of Broyhill's property to Deborah in January 2004.  This constitutes conversion. *Ruggles v. Sabe*, 670 S.W.2d 356, 358 (N.D. 2003) ("If removal of the hanger resulted in a diminishment of the remainder interest, then the remainderman is entitled to damages for waste"); *Shoemaker v. Estate of Freeman*, 967 P.2d 871, 878 (Okla. 1998) (the evidence support an award of punitive damages for conversion of remainder interest in farm); *Guy v. Estate of Taylor*, 1993 WL 360682 * 7 (Tenn. App. 1993) (conversion of life estate in bank stock not mitigated by fact that defendant had a remainder interest in the stock); *Rice v. Gregory*, 780 S.W.2d 384, 387 (Tax. App. 1989) (affirming judgment for conversion of remainder interest in stock); *Baldock v. Green*, 109 Cal.App.3d 234, 167 Cal.Rptr. 157 (1980) (remaindermen had cause of action for conversion of funds in bank account); *see Ashworth v. Fleenor*, 178 Va. 104, 111, 16 S.E.2d 309 (1941) (where

---

[11]     Broyhill has stated a separate claim of negligence against the Bank. Section 26-5 of the Virginia Code (1950), as amended, creates a cause of action against any "fiduciary" or agent who "by his negligence or improper conduct" loses funds.  In a negligence action against fiduciary, the beneficiary is entitled to recover "the principal of what is so lost".

taking of property by mortgagee is unlawful, he is liable to mortgagor or those suing in his right for the full market value of the property at the time of the seizure).

Finally, although the Bank broadly suggests that Broyhill has failed to plead sufficient factual allegations to support "any" plausible claim for relief, the Bank absolutely fails to allege any reason (except laches) why Broyhill is not entitled to surcharge and falsify the excessive management and administrative fees changed to the Broyhill Trust and the Personal Trust, brokerage fees charged as a result of the churning of the accounts, and the distributions unlawfully made to Deborah, as distinctly requested in ¶¶ 62 and 64 of the Complaint.

## **CONCLUSION**

For the reasons stated above, Broyhill respectfully requests the Court to deny the Bank's motion to dismiss.  If necessary, Broyhill respectfully requests leave to file an Amended Complaint to clarify and supplement the facts and claims already pled.


DATED:        August 13, 2010


MARVIN T. BROYHILL, III


By:    */s/Steven S. Biss*
                Steven S. Biss (VSB # 32972)
                300 West Main Street, Suite 102
                Charlottesville, Virginia 22903
                Telephone:     (804) 501-8272
                Facsimile:     (202) 318-4098
                Email:         **stevenbiss@earthlink.net**

                *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2010, a copy of the foregoing was filed electronically using the Court's CM/ECF system, and mailed to counsel for the defendant, Jon S. Hubbard, Esquire, Troutman Sanders LLP, 1001 Haxall Point, Richmond, VA 23219 (john.hubbard@troutmansanders.com).

By:____/s/Steven S. Biss_____
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:   (804) 501-8272
        Facsimile:   (202) 318-4098
        Email:    **stevenbiss@earthlink.net**

        *Counsel for the Plaintiff*