**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **MARVIN T. BROYHILL, III,** | ) | |
| **Individually and on behalf of the** | ) | |
| **Broyhill Trust, Personal Trust,** | ) | |
| **and the Estate of Audrey Broyhill,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No: 1:10-cv-00905** |
| | ) | **(LMB/TRJ)** |
| | ) | |
| **BANK OF AMERICA, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Bank of America, N.A. ("Bank of America" or "the Bank"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(6), submits this reply memorandum in support of its Motion to Dismiss Plaintiff's Complaint in its entirety and with prejudice.

### INTRODUCTION

Plaintiff's memorandum in opposition to Bank of America's Motion to Dismiss makes scant reference to the allegations and admissions which are actually contained in the Complaint, evidently preferring to invoke broad tolling doctrines and statutes that have no application to the claims asserted therein.[1]  Moreover, the Plaintiff makes little attempt to address the substantive deficiencies in his Complaint, instead making the simplistic argument that Bank of America "seems to pick on the names given by [Plaintiff] to his claims." (Mem. Opp. at 15).  For the

---

[1] Indeed, Plaintiff appears to selectively recognize the procedural deficiencies with respect to at least some of his claims, as he has withdrawn his time-barred claim for "constructive fraud." (*See* Mem. Opp. at 5, n.6).

reasons set forth in Bank of America's initial memorandum, and for the additional reasons set forth below, Plaintiff's claims must be dismissed with prejudice.

ARGUMENT

**I.      Plaintiff's claims unquestionably are time-barred and must be dismissed.**

The Complaint drones for pages about alleged tortious conduct by Bank of America in the 1990s.  In response to Bank of America's argument that Plaintiff's dated claims are time-barred, Plaintiff has asserted three broad and interrelated arguments.  First, Plaintiff contends that the five-year statute of limitations enumerated in Va. Code § 55-550.05(C) is applicable to and saves all of his claims. (Mem. Opp. at 4).  Plaintiff makes the same argument with respect to the five-year period of limitation for "injury to property" enumerated in Va. Code § 8.01-243, stating that "because this is an action for injury to property, the statute of limitations for Counts I, III, IV and V is five (5) years." (Mem. Opp. at 8).  Second, Plaintiff asserts that even though the alleged tortious acts occurred in prior decades, under the "continuing undertaking rule," the five-year limitations period that he contends is applicable did not accrue until November 2004, the date when the relationship between Plaintiff and Bank of America was terminated. (Mem. Opp. at 6).  Third, Plaintiff contends that Bank of America should be "estopped by its conduct" from asserting the affirmative defense of the statute of limitations. (Mem. Opp. at 10).  All of these arguments fail as a matter of law.

**A.      Va. Code § 55-550.05(C) has no application to the trusts at issue, and Va. Code § 8.01-243 does not provide a five-year statute of limitations for breach of fiduciary duty.**

Va. Code § 55-550.05(C) of the Virginia Uniform Trust Code ("VUTC"), entitled, "limitation of action against trustee," provides that "a judicial proceeding by a beneficiary against a trustee for breach of trust shall be commenced within five years after the first to occur

- 2 -

of: (1) The removal, resignation, or death of the trustee; (2) The termination of the beneficiary's interest in the trust; or (3) The termination of the trust." *Id.* Under § 55-550.05(C), Plaintiff contends that his claims are not time-barred because he filed his claims within "five years after the Bank terminated the Broyhill Trust" in November 2004. (Mem. Opp. at 4).

      **1.**    **Section 55-550.05(C) does not apply because Plaintiff has not pleaded a claim for breach of trust.**

By its very terms, § 55-550.05(C) only applies to claims against a trustee for "breach of trust." The Complaint contains no such claim against Bank of America. Plaintiff's Complaint asserts four counts that are relevant to the statute of limitations analysis: Breach of Fiduciary Duty (Count I); Negligence (Count III); Breach of Contract (Count IV); and Conversion (Count V). As shown in the Bank's initial memorandum, all four of these claims accrued and expired prior to Plaintiff filing suit in July of 2008. (Def's Memo. at 8-15). Plaintiff has not pleaded a claim for breach of trust, and, therefore, § 55-550.05(C) is completely inapplicable in this matter. Thus, Plaintiff's attempt to invoke § 55-550.05(C) fails as a matter of law.

      **2.**    **Section 55-550.05(C) does not apply because Plaintiff's claims accrued prior to July 1, 2006.**

Plaintiff ignores the additional provisions of the VUTC that prevent its retroactive application. The provisions of the VUTC became effective on July 1, 2006. Section 55-551.06(B) provides that "[i]f a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before July 1, 2006, that statute continues to apply to the right even if it has been repealed or superseded." Va. Code § 55-551.06(B). The plain language of the provision thus mandates that the five-year period of limitations for claims asserting a breach of trust does not affect the operation of any statutes of limitation that began to run on claims accruing prior to July 1, 2006. *Id.* Moreover, the Official

Commentary for the Uniform Trust Code states that "rights already barred by a statute of limitation or rule under former law are not revived by a possibly longer statute or more liberal rule under this Code.  Nor is an act done before the effective date of the Code affected by the Code's enactment."  Unif. Trust Code § 1106, 7C U.L.A. 672, cmt. (2006).

According to Plaintiff's theories, his claims accrued - at the very latest - in November of 2004.  (Mem. Opp. at 6) (Compl., ¶¶ 30, 35-40).  Prior to the enactment of the VUTC, a common law claim existed for breach of trust against a trustee.  *See Kline v. Nationsbank of Va., N.A.*, 886 F. Supp. 1285, 1297 (E.D. Va. 1995) (claimant asserting claim for breach of trust).  Also, because there was no express statute of limitations for such a claim, claims for breach of trust were governed by Virginia's two-year "catch-all" statute of limitations under Va. Code § 8.01-248.  *Kline*, 886 F. Supp. at 1297 (dismissing breach of trust claim as untimely under § 8.01-248).  At the very latest, Plaintiff allegedly "acquired" his rights to sue for breach of trust in 2004, and the statutory periods for his claims thus "commenced to run" before July 1, 2006.  Va. Code § 55-552.06(B).  Hence, according to Plaintiff's own allegations and applicable law, his claim for breach of trust: (1) accrued in November 2004; and (2) expired two years later in November 2006, almost two years before Plaintiff filed suit.  By its plain language, therefore, the VUTC does not apply, and Plaintiff may not use § 55-550.05(C) to revive any of his claims, including any claim for breach of trust.  Any amendment to the Complaint to state a claim for "breach of trust" would be manifestly futile, as such a claim would be time barred.[2]

---

[2] It is debatable whether Plaintiff's original Complaint filed in July of 2008 contained sufficient factual allegations to support a claim for breach of trust.  If it did not, then the July 2008 lawsuit and Plaintiff's non-suit did not toll the statutory period and the claim is time-barred.  Regardless, Plaintiff's breach of trust claim is barred by the two-year statute of limitations since it accrued prior to July 1, 2006.  Va. Code § 55-551.06(B).

3. **Virginia law is clear that the statute of limitations for a breach of fiduciary duty claim is two years irrespective of the nature of the damages claimed by the Plaintiff.**

Plaintiff's contention that Va. Code § 8.01-243 provides a five-year statute of limitations for all of his claims, including his claim for breach of fiduciary duty, based on the nature of Plaintiff's characterization of supposed property damages, is in error. (Mem. Opp. at 8). It is settled law that, *regardless* of whether a claim for breach of fiduciary duty implicates a claim for the misappropriation of trust assets, such a claim remains subject to a two-year statute of limitations. *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995) ("We have ruled repeatedly that under Virginia law a breach of fiduciary duty claim is subject to the . . . limitations period of § 8.01-248."); *Hester v. United States*, 2007 U.S. Dist. LEXIS 14834, at *14 (W.D. Va. 2007) ("[A]ny third-party claim arising from Wendell's misappropriation of the trust assets is now barred by Virginia's two-year statute of limitations that applies to breaches of fiduciary duty."); *Goldstein v. Malcolm G. Fries & Assocs.*, 72 F. Supp. 2d 620, 625-26 (E.D. Va. 1999) ("Claims for breach of fiduciary duty are governed by Virginia's catch-all statute of limitations . . . .") (citing Va. Code § 8.01-248)). Therefore, the timeliness of Plaintiff's claim for breach of fiduciary duty must be determined under the two-year period of limitation specified under Va. Code § 8.01-248 and not the five-year period contained in Va. Code § 8.01-243.[3]

---

[3] Plaintiff is equally incorrect that Va. Code § 8.01-243 applies to his claim for "breach of contract," which is governed by Va. Code § 8.01-246. As set forth below, however, Plaintiff cannot assert a viable claim for breach of contract in this matter.

**B.      Plaintiff cannot rely on the continuing undertaking doctrine to avoid dismissal of his claims because (i) the doctrine does not apply and (ii) the claims still would be time-barred and contrary to law.**

**1.      The continuing undertaking doctrine is not applicable here and does not toll Plaintiff's claims.**

Plaintiff also attempts to claim the benefit of the "continuing undertaking doctrine" to toll the accrual of the applicable limitation periods until the "termination of Plaintiff's relationship with Bank of America in November 2004." (Mem. Opp. at 6). "The continuing undertaking doctrine operates as a limited exception to the rule requiring strict construction of statutes of limitation." *Harris v. K & K Ins. Agency*, 249 Va. 157, 161, 453 S.E.2d 284 (1995) (citing *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 547, 379 S.E.2d 316, 318 (1989)). Thus, the continuing undertaking doctrine in no way displaces the "general rule" under Virginia law that "the statute of limitations begins to run against a cause of action at the time of its accrual." *McCormick v. Romans*, 214 Va. 144, 148, 198 S.E.2d 651, 654 (1973); *see also Al-Abood v. El Shamari*, 217 F.3d 225, 234 (4th Cir. 2000) ("Exceptions to the limitations periods are to be construed narrowly and apply only in extraordinary circumstances.") (applying Virginia law).

In recognition of the narrow scope of the continuing undertaking doctrine, the Supreme Court of Virginia has applied the exception "only with regard to a continuous or recurring course of professional services related to a particular undertaking." *Keller v. Denny*, 232 Va. 512, 518, 352 S.E.2d 327, 331 (1987). The Supreme Court has applied the doctrine in cases involving the professional services of physicians, attorneys, and accountants, but no Virginia court has ever applied the doctrine in the context of a beneficiary/trustee relationship. *See Farley v. Goode*, 219 Va. 969, 976, 252 S.E.2d 594, 599 (1979) (service of physician for treatment of a particular disease); *Keller*, 232 Va. at 518, 352 S.E.2d at 330 (service of an attorney); *Boone v. C. Arthur*

*Weaver Co.*, 235 Va. 157, 163, 365 S.E.2d 764, 767 (1988) (service of an accountant); *Wood v.*

*Carwile*, 231 Va. 320, 327, 343 S.E.2d 346 (1986) (service of an attorney).

Moreover, Plaintiff's attempted invocation of the doctrine ignores the more recent

decisions of the Supreme Court of Virginia which have rejected the application of the continuing

undertaking doctrine in the context of occupations which involve discrete and severable tasks,

notwithstanding the continuous nature of the relationship between the parties. *See Nelson v.*

*Commonwealth*, 235 Va. 228, 243-44, 368 S.E.2d 239, 248 (1988) (although a general architect-

owner relationship continued to exist, architect's services were severable into separate and

distinct phases); *Harris*, 249 Va. at 161, 453 S.E.2d at 286-87 (actions of an insurance broker do

not, by their nature, require continuing work, and cannot be characterized as continuing services

related to a particular undertaking).

Bank of America's alleged role as trustee, which involved independent and scheduled

tasks over the course of its administration, is more akin to the services performed by the architect

in *Nelson* and the insurance broker in *Harris* than it is to the services rendered by an attorney,

accountant or physician with respect to a singular, "particular" undertaking. *See Keller*, 232 Va.

at 518, 352 S.E.2d at 330.  Bank of America was engaged as trustee for an indefinite period of

time.  During its time as trustee, Bank of America performed any number of independent and

discretionary tasks.  Indeed, the Complaint itself alleges that Bank of America engaged in

numerous but wholly unrelated actions that breached its duties towards Plaintiff.  *See*, *e.g.*,

Compl., ¶ 45 (listing thirteen "acts and omissions" occurring between 1993 and 2004 which

allegedly violated Bank of America's fiduciary duties to Plaintiff).  Thus, the only type of

continuity alleged by Plaintiff is a continuing relationship with Bank of America.  This type of

continuing relationship alone, however, is insufficient to invoke the continuing undertaking

doctrine.[4]  *Nelson*, 235 Va. at 243-44, 368 S.E.2d at 248; *Harris*, 249 Va. at 161, 453 S.E.2d at 286-87 (1995).

Furthermore, the Supreme Court of Virginia has never approved of the application of the continuing undertaking doctrine for any period of time that is even close to the length of time that Plaintiff would have this Court apply that doctrine here.  *See Farley*, 219 Va. at 976, 252 S.E.2d at 599 (breach occurred four years prior to the filing); *Keller*, 232 Va. at 518, 352 S.E.2d at 330 (lawsuit filed seven years from time of breach); *Boone*, 235 Va. at 163, 365 S.E.2d at 767 (five years from breach until the filing of the action); *Wood*, 231 Va. at 327, 343 S.E.2d at 346 (1986) (five years from time of first breach).  In this sense, Plaintiff's argument, which respects conduct that allegedly occurred as early as 1993, *see* Compl., ¶¶ 13-18, constitutes a radical expansion of the continuing undertaking doctrine, in derogation of the narrow construction of the doctrine required by the Supreme Court of Virginia.[5]  For this additional reason, Plaintiff's attempted application of the continuing undertaking doctrine should be rejected.

> ### 2.    The continuing undertaking doctrine does not save Plaintiff's claims from dismissal.

Ultimately, the continuing undertaking doctrine does not save Plaintiff's claims from dismissal - even if the claims accrued in November 2004 - because they are still time-barred or contrary to the law.  Plaintiff did not file suit until July of 2008.  Plaintiff's cause of action for breach of fiduciary duty would have expired two years after accrual - almost two years before

---

[4] The 2007 bankruptcy court decision cited by Plaintiff in *In re James River Coal Co.*, 360 B.R. 139, 160 (Bankr. E.D. Va. 2007) does not alter this conclusion.  In *James River*, the court engaged in no serious discussion concerning the application of the continuing undertaking doctrine, failing to even mention the doctrine by name or to cite any of the foregoing authority under Virginia law.  *Id.*  Moreover, in *James River* the plaintiff had alleged that the conduct in question constituted "one unified transaction."  *Id.*  In contrast, Plaintiff's Complaint contains no such unity of action, and instead pleads distinct and severable allegations relative to many different years and periods of trust administration.

[5] Moreover, as expressed with respect to the analysis of the doctrine of laches, *infra*, as a practical matter, litigation about conduct occurring decades ago is impossible.  The witnesses are long gone and the passage of time unfairly prejudices the Bank, which must defend the frivolous allegations of misconduct occurring long ago.

Plaintiff filed suit.   (Def's Mem. at 8-10); *supra* Section I.A.3.   Likewise, any attempt by

Plaintiff to assert a claim for breach of trust would be time-barred by the two-year statute of

limitations.   *Supra* Section I.A.2.   As shown in the Bank's initial memorandum, Plaintiff's

negligence claim is actually a claim for breach of fiduciary duty since Plaintiff cannot allege that

the Bank breached any common law duty of reasonableness.   (Def's Mem. at 11-13).   Plaintiff's

breach of contract claim fails for lack of any contract and also is time-barred as pled.   (Def's

Mem. at 21-22).   Finally, Plaintiff's claim for conversion is simply contrary to the law.   (Def's

Mem. at 22-24).   Thus, even accepting Plaintiff's proposed accrual date of November 2004 as

correct (it is not), Plaintiff's claims are still time-barred or contrary to law.   Accordingly, the

claims must be dismissed with prejudice.

### C.   Bank of America is not "estopped" from asserting the statute of limitations.

Plaintiff contends that Bank of America ought to be "estopped" from asserting the

expiration of the applicable statutes of limitations.   (Mem. Opp. at 10).   As the Fourth Circuit has

held, however, under Virginia law, "[e]xceptions to [statutory] limitations periods are to be

construed narrowly and apply only in extraordinary circumstances."   *Al-Abood*, 217 F.3d at 234

(denying equitable tolling argument relative to a claim for conversion); *see also Haburn v.*

*Petroleum Mkt., Inc.*, 2007 U.S. Dist. LEXIS 88048, *20 (W.D. Va. Nov. 29, 2007) ("[T]he

Fourth Circuit has emphasized that these equitable exceptions to the statutory limitations period

[equitable estoppel and equitable tolling] 'should be sparingly applied.'") (citations omitted).

Fundamentally, in order to plead the existence of equitable estoppel, the party asserting

the existence of estoppel must have "reasonably relied on the words and conduct of the person to

be estopped in allowing the limitations period to expire."   *Bedford v. James Leffel & Co.*, 558

F.2d 216, 218 (4th Cir. 1977); *accord T. v. T.*, 216 Va. 867, 872, 224 S.E.2d 148, 152 (1976)

(requiring "representation, reliance, a change of position, and detriment."). Here, however, Plaintiff has not alleged any representation or action by Bank of America upon which he reasonably relied in failing to sue within the limitations period. Indeed, as noted in the initial memorandum, the Complaint is replete with statements recounting Plaintiff's vehement distrust of banks, indicating his unwillingness to rely (let alone *reasonably* rely) on any of Bank of America's representations to him. *See, e.g.,* Compl., ¶ 3; *see also Boykins Narrow Fabrics Corp. v. Weldin Roofing & Sheet Metal, Inc.*, 221 Va. 81 (1980) (rejecting the plaintiff's request for equitable estoppel, ruling that the plaintiff "failed to allege that defendant made any representation, or committed any affirmative act . . . which did in fact induce [plaintiff] to refrain from filing suit against [defendant] within the statutory limitation period.").

Moreover, it is clear that Plaintiff had knowledge of the Bank's activities with respect to the assets of the trusts when he obtained a judicial accounting of trust assets in 2002. *See* Compl., ¶¶ 31-34. Yet, Plaintiff failed to file suit for over six years after this date. Plaintiff cannot plausibly assert that he reasonably and detrimentally relied on the Bank's actions in allowing the limitations periods for his claims to expire when he has simultaneously alleged that was fully informed of the Bank's activities at such an early time. Therefore, because Plaintiff has not pled (and cannot plausibly plead) the existence of detrimental reliance or other necessary elements from a factual standpoint, his claim of equitable estoppel must be rejected.[6]

---

[6] Because Plaintiff cannot claim the benefit of any of the tolling and equitable doctrines that he has attempted to assert in response to Bank of America's arguments respecting the expiration of the relevant statues of limitation, the timeliness of Plaintiff's claims must be assessed relative to the dates on which the conduct at issue is alleged to have occurred in the Complaint. Bank of America painstakingly detailed the time-barred nature of essentially all of Plaintiff's allegations in its initial memorandum in support of its Motion to Dismiss, and Bank of America incorporates the substance of those arguments herein.

II.     **Plaintiff's claim for "negligence" is subsumed by his claim for breach of fiduciary duty and also is untimely, even if subject to a five-year statute of limitations.**

        A.     **Plaintiff's negligence claim is subsumed by his breach of fiduciary duty claim.**

As pled, Plaintiff's "negligence" claim is, in substance, a claim for breach of fiduciary duty. *Rollins v. Branch Banking & Trust Co. of Va.*, 56 Va. Cir. 147, 150 (Roanoke 2001) (holding that when a claim for negligence is based on the "negligent administration" of a trust or an estate, such a claim is "subsumed" by potential claims for breach of fiduciary duty/breach of trust). Because Plaintiff's claims for breach of fiduciary duty are all unquestionably time-barred, his claim for "negligence" necessarily fails and must be dismissed with prejudice.

In response, Plaintiff contends that he has stated a "separate claim of negligence" under Va. Code § 26-5, which provides that "[i]f any fiduciary mentioned before in this chapter, or any agent or attorney at law, shall, by his negligence or improper conduct, lose any debt or other money, he shall be charged with the principal of what is so lost, and interest thereon, in like manner as if he had received such principal." *Id.* This argument is entirely confused. Virginia Code § 26-5 does not provide for a private cause of action against fiduciaries. Rather, § 26-5 establishes a measure of recovery for claims against fiduciaries, providing that the fiduciary is liable for both "principal" and "interest" of any "losses" caused by its conduct. *Id.*; *see also Southall's Adm'r v. Taylor*, 55 Va. 269, 284 (1858) (noting that the true object of this section is to settle any question which might otherwise arise as to charging fiduciaries with the interest as well as the principal of debts lost by their negligence). Indeed, courts in Virginia continue to assess the propriety of a trustee's conduct under claims for breach of fiduciary duty and breach of trust, not under § 26-5. Va. Code § 55-550.01(A) ("A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."); *see also Ward v. NationsBank of Virginia*,

256 Va. 427, 507 S.E.2d 616 (1998) (trustee successfully defended beneficiaries' claims of breach of fiduciary duty and breach of the terms of the trust agreement).  Therefore, Plaintiff's novel attempt to use Va. Code § 26-5 as a statutory vehicle to somehow create a private cause of action for "negligence" against fiduciaries must be rejected.

### B.      Plaintiff's negligence claim is time-barred.

It is well-settled that the limitations period under Va. Code § 8.01-243(B) with respect to a claim for negligent injury to property begins to run on the date of injury, even if that injury is not discovered until a later date.  *Bader v. Central Fidelity Bank*, 245 Va. 286, 290, 427 S.E.2d 184, 186 (1993).  Thus, even under the 5-year statutory period for property damage claims, at least two of the three instances of the allegedly negligent conduct pled by Plaintiff are straightforwardly time-barred.  First, Plaintiff's contention that the Bank failed "to make annual gifts or to take any other action to mitigate estate tax liability" accrued no later than 1994, and certainly no later than April 2003.  *See* Compl., ¶ 52.  Second, Plaintiff's allegations that Bank of America engaged in the purchase and sale of "unsuitable securities" and failed to maintain an "all cash position during a period of stock market turmoil," Compl., ¶ 52, all precede Audrey Broyhill's death in April 2003, which was over five years prior to the institution of the nonsuited action on July 17, 2008.  Compl., ¶¶ 31-34.  Therefore, any claim relating to this conduct is also untimely.

III.    **Plaintiff has failed to state a cognizable claim for "breach of contract" and any recasting of this claim in an amendment as one for "breach of trust" still would be untimely.**

In Count IV of the Complaint for "breach of contract," Plaintiff contends that Bank of America's actions "constitute a breach of the Broyhill Trust and Personal Trust agreements." Compl., ¶ 55.  However, as Plaintiff fails to dispute, it is settled law that "[a] trust instrument is not a contract" and is not susceptible to "breach" for that reason.  *Rollins*, 56 Va. Cir. at 151. Moreover, Plaintiff still has not identified the provisions of the "contracts" (*i.e.* the trusts) that were allegedly breached by Bank of America.  *See Ruffolo v. Oppenheimer & Co.*, 1991 U.S. Dist. LEXIS 1485, at *5 (S.D.N.Y. Feb. 5, 1991) ("With respect to the contract claim, plaintiff's failure to plead the terms of the agreement alleged to have been breached, renders the claim defective.").  Thus, his claim for breach of contract is both substantively and procedurally defective and must be dismissed.

In lieu of addressing the substance of these arguments, however, Plaintiff contends that Bank of America is "picking" on the labels assigned to his claims.  (Mem. Opp. at 15). Specifically, Plaintiff states that "the Bank seems to suggest that Broyhill should have labeled Count IV Breach of 'Trust,' instead of Breach of 'Contract.'" (Mem. Opp. at 15).  The labels applied to Plaintiff's claims, however, are not mere formalities.  Rather, they (and the underlying allegations made) are the sole bases by which Bank of America is able to assess the substance of the claims against it.  Bank of America cannot control the nature of Plaintiff's pleading, but Plaintiff is bound by his pleading for that reason.  *Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 n.10 (E.D. Va. 2008) (a party is "bound by its pleading").  Plaintiff cannot avoid the dismissal of his claim for breach of contract on the grounds that he could have pled some other claim.

Moreover, the legal distinction between a "breach of trust" and a "breach of contract" is entirely substantive. There are key differences between such allegations that cannot simply be disregarded. For instance, a claim for breach of trust requires no showing of contractual privity, whereas such a showing is necessary to state a claim for breach of contract. *See Michigan Mut. Ins. Co. v. Smoot*, 129 F. Supp. 2d 912, 920 (E.D. Va. 2000) ("One must be a party to, or a beneficiary of, a contract to sue on that contract."). Additionally, as set forth above, any claim by Plaintiff for breach of trust would be subject to a two-year statute of limitations, different than the statute of limitations for claims for breach of contract under Va. Code § 8.01-246, and the claim for breach of trust would be time-barred. *See Kline*, 886 F. Supp. at 1297. Therefore, Plaintiff's argument on this issue is without merit, and the claim for breach of contract should be dismissed.

Finally, even assuming the viability of a claim for breach of contract, almost all of the alleged acts and omissions by the Bank occurred more than five years prior to Plaintiff's filing suit in July 2008. As noted in Bank of America's initial memorandum, the only allegation in the Complaint possibly alleged to have occurred near five years of his filing suit relates to the Bank's repayment of "personal" loans in January 2004. Compl., ¶ 30. However, there is no allegation that this particular conduct breached the terms of any oral or written contract. Therefore, Plaintiff's claim for breach of contract, even if cognizable, is time-barred.

## IV. As a contingent beneficiary of the trust assets, Plaintiff cannot state a viable claim for conversion, and any such claim would also be time-barred.

### A. Plaintiff lacks standing to assert a claim for conversion.

Under Virginia law, "[a] person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving *the owner* of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, *the owner's*

rights." *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666 (2001) (emphases added).  As previously noted, Plaintiff lacked an ownership interest sufficient to state a claim for conversion of the trust assets at the time that the alleged conversion occurred due to the fact that Plaintiff had no right to immediately take possession of the trust property at that time.  *See, e.g., Gillespie v. Seymour*, 14 Kan. App. 2d 563, 572 (Kan. Ct. App. 1990) ("[T]he Beneficiaries lack[ed] standing to maintain a conversion action because they possessed a future interest in the trust but had no right to immediate possession of the trust funds" at the time that the alleged conversion occurred.").

In response, Plaintiff contends that he had a "vested remainder interest" in the trust assets; a real property concept that has no application here.  Moreover, during the period of time when the alleged acts of conversion occurred, it is undisputed that Plaintiff's interest was subject to complete and immediate divestment through the terms of the trusts themselves.  *See* Compl., ¶¶ 4, 45(e).  Thus, Plaintiff can in no way claim to have been an "owner" of these assets at the time of the alleged conversion and his claim of conversion fails.

As an additional argument, Plaintiff contends that he "clearly and indisputably had an immediate possessory right to his "estate" sufficient to state a claim for conversion.  (Mem. Opp. at 15).  As a threshold matter, Plaintiff's claim for conversion alleges only that Bank of America "wrongfully exercised and assumed authority over the assets of the Broyhill Trust and the Personal Trust, *depriving the Trusts*, respectively, of possession and/or their property rights."  Compl., ¶ 58 (emphasis added).  As pled, therefore, the claim for conversion does not implicate the assets of the estate, and Plaintiff's attempt to plead such a claim in his memorandum should be rejected.  More fundamental, however, is the complete lack of any factual predicate for the assertion of a claim for conversion relative to the assets of the estate.  There is no allegation (nor

are there any facts pled) that the Bank converted any of the estate assets while the estate was open, or that it retained any of the funds of the estate after it closed.  Indeed, as set forth below, Plaintiff's claims for conversion relate entirely to Bank of America's conduct when it was serving as trustee, not during the time that it allegedly was acting as executor.  Hence, Plaintiff's claim for conversion relative to the assets of the "estate" also fails.[7]

**B.      Plaintiff's conversion claim is time-barred.**

Furthermore, it is settled that the five-year statute of limitations for conversion accrues on the date of the conversion itself and not the date of discovery.  Va. Code § 8.01-243(B); *see also Bader v. Central Fidelity Bank*, 245 Va. 286, 427 S.E.2d 184, 187 (1993); *First Investors Corp., v. Citizens Bank, Inc.*, 757 F. Supp. 687, 690 (W.D.N.C. 1991).  Again, although unaddressed by Plaintiff, the acts of "conversion" alleged in Count V all occurred well over five years before Plaintiff filed the nonsuited action.  Specifically, Plaintiff alleges three instances of conversion in Count V: (i) Bank of America's transfer of funds from the Broyhill Trust to the Personal Trust; (ii) the Bank's "churning" of investment assets; and (iii) the "excessive and unjustified fees" imposed by the Bank.  Compl., ¶ 59.  The transfer of funds allegedly occurred in December 1993 and no later than April 2003.  Compl., ¶¶ 14, 22-23.  The Bank's alleged "churning" of accounts occurred in 2001.  Compl., ¶ 32.  Finally, Plaintiff alleges that the Bank charged "excessive and

---

[7] Plaintiff's "authority" for his argument on this issue is entirely unhelpful.  In *Ruggles v. Sabe*, 670 N.W.2d 356, 358 (N.D. 2003), the court considered an action for waste (not conversion) under the law of North Dakota, where, by statute, the plaintiff was permitted to sue for waste even if he had "no interest in the property at the commencement of the action." *Id.*  The decisions in *Shoemaker v. Estate of Freeman*, 967 P.2d 871, 878 (Okla. 1998), *Guy v. Estate of Taylor*, 1993 WL 360682, at *7 (Tenn App. 1993), and *Rice v. Gregory*, 780 S.W.2d 384, 387 (Tex. App. 1989), all involved situations where an executor had refused to distribute assets of the estate to individuals who had an immediate claim to such property after the death of the testator.  No such factual allegations appear in the Complaint.  In *Baldock v. Green*, 109 Cal.App.3d 234 (1980), the court was considering a claim for professional negligence, not conversion. Finally, in *Ashworth v. Fleenor*, 178 Va. 104, 111, 16 S.E.2d 309 (1941), the Court addressed the seizure of real property by a mortgagee and focused on the fair market value of the property.

unjustified fees" in 2001.  Compl., ¶¶ 31-32 (Plaintiff seeks to discharge the fees reflected in the 2002 accounting).  Therefore, the claim for conversion is time-barred and must be dismissed.

**V.    Plaintiff's claim for an accounting, surcharge and falsification is barred by the doctrine of laches.**

"[T]he presence of laches is ascertained by a balancing of the claimant's delay with the proffered excuse, if any, against the defendant's consequent detriment." *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 127 (4th Cir. 1966).  And, despite Plaintiff assertion that "equity" necessarily follows the limitations period prescribed by law, it is well-established that "[t]he length of delay constituting laches may be longer or shorter than the analogous statutory period, depending on the individual facts and circumstances of each case."  *See, e.g.*, *Potter Instrument Co. v. Storage Technology Corp.*, 1980 U.S. Dist. LEXIS 14348, at *11 (E.D. Va. 1980).

In his memorandum in opposition, Plaintiff still has not proffered any justification for his substantial delay in filing this action, notwithstanding his averred knowledge of certain conduct allegedly undertaken by Bank of America since 1994.  Compl., ¶ 21.  Instead, Plaintiff remarks only that he "did wait a number of years before filing to surcharge and falsify accountings." (Mem. Opp. at 13).  This vapid averment fails to proffer a sufficient excuse to avoid the doctrine of laches.  Furthermore, Plaintiff cites the decision in *Broaddus v. Gresham*, 181 Va. 725, 734 26 S.E.2d 33, 36 (1943) for the proposition that "so long as there has been no denial or repudiation of an *express and continuing trust* . . . neither the statute of limitations nor laches will constitute a bar to an account or other proper relief."  *Id.* (emphasis added).  The trusts at issue, however, allegedly were discontinued in 2004.  (Mem. Opp. at 6).  Thus, the holding in *Broaddus* provides no basis to refute the doctrine of laches here.

Finally, Plaintiff summarily discounts the prejudice to Bank of America in requiring it to account for its conduct relative to its administration of the trusts from as early as 1993. In the past seventeen years, Bank of America has gone through multiple mergers, it has had significant staff turnover, and it has potentially lost the benefit of documentation through its documentation retention policies. Plaintiff's allegations are precisely the type of stale and prejudicial claims that the doctrine of laches is meant to foreclose. *See, e.g.*, *Fund for Government Investors, Inc. v. Government Investors Trust*, 1981 U.S. Dist. LEXIS 17712, at *14 (E.D. Va. July 21, 1981) ("FGI's undue delay in filing suit and the resultant significant prejudice to GIT constitutes laches, and I find this a specific bar to their right to relief in this case."). Plaintiff's claim for an accounting, surcharge and falsification should therefore be dismissed.[8]

## VI.    Plaintiff has failed to state a valid claim for punitive damages.

Under Virginia law, "because punitive damages are in the nature of a penalty, they should be awarded only in the cases of the most egregious conduct." *Philip Morris Inc. v. Emerson,* 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988). Disregarding this established standard, Plaintiff contends that "*whenever* a plaintiff pleads and proves an intentional tort, Virginia law permits a trier of fact to award punitive damages. Here, Broyhill has pled the intentional torts of Breach of Fiduciary Duty and Conversion." (Mem. Opp. at 13-14) (emphasis added). Plaintiff's argument that punitive damages are appropriate "whenever" an intentional tort is alleged is contrary to the established law of Virginia, which permits an award of punitive damages only in the context of the most "egregious" instances of intentional conduct. *Philip Morris Inc.,* 235 Va. at 407, 368 S.E.2d at 283. Moreover, it is settled law that "[u]nder the law of trusts, trustees generally are not liable for punitive damages for breach of fiduciary duty." *Donnkenny, Inc. v. Virginia*

---

[8] The doctrine of laches applies with equal force to the remaining claims asserted by Plaintiff. Thus, to the extent that any of those claims are somehow timely, they too should be dismissed under the doctrine of laches.

*Financial & Ins. Services, Inc.*, 739 F. Supp. 290, 293 (W.D. Va. 1990); *see also A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 673 (4th Cir. 1986) (proof of the "elements of conversion cannot alone sustain the judgment granting punitive damages").  The allegations in the Complaint do not allege the type of wanton or malicious conduct that would make this an "egregious" case supporting an award for punitive damages.  Therefore, Plaintiff's claim for punitive damages must be dismissed.

**VII.    Plaintiff lacks standing to sue "on behalf of the Broyhill Trust, Personal Trust, and the Estate of Audrey Broyhill" or on behalf of Audrey Broyhill.**

Plaintiff filed this action both "Individually and on behalf of the Broyhill Trust, Personal Trust, and the Estate of Audrey Broyhill."  Plaintiff, however, has no standing to sue on behalf of those legal entities, as claims asserted on behalf of trusts and estates belong to the trustees and administrators, not beneficiaries.  *Poage v. Bell*, 35 Va. 604, 607 (1837) (ruling only trustee, not beneficiary, had standing to assert claim to recover trust property); 20 *Michie's Juris.*, Wills § 169 ("[A] legatee cannot sue to recover the personal assets of the testator; the right to maintain such suit is in the personal representative alone.").  Plaintiff has failed to address this argument in his memorandum in opposition.  However, to the extent that Plaintiff has attempted to assert any of his claims in the Complaint on behalf of the trusts, the estate, or Audrey Broyhill, they must be dismissed with prejudice.

CONCLUSION

WHEREFORE, Defendant, Bank of America, N.A., respectfully requests that the Court enter an Order: (1) dismissing each and every claim or cause of action asserted in the Complaint with prejudice; (2) striking Plaintiff's demand for punitive damages; (3) awarding Bank of America its costs and expenses incurred herein; and (4) awarding Bank of America such further relief as the Court deems appropriate.

**BANK OF AMERICA, N.A.**


By: _____ Jon S. Hubbard _____
    David N. Anthony
    Virginia State Bar No. 31696
    Jon S. Hubbard
    Virginia State Bar No. 71089
    Timothy J. St. George
    Virginia State Bar No. 77349
    *Attorneys for Bank of America, N.A.*
    TROUTMAN SANDERS LLP
    1001 Haxall Point
    Richmond, VA 23219
    Telephone:  (804) 697-1200
    Facsimile:  (804) 698-1339
    Email:  david.anthony@troutmansanders.com
    Email:  jon.hubbard@troutmansanders.com
    Email:  tim.stgeorge@troutmansanders.com

    Mary Catherine Zinsner
    Virginia State Bar No. 31397
    *Attorney for Bank of America, N.A.*
    TROUTMAN SANDERS LLP
    1660 International Drive, Suite 600
    McLean, VA  22102-3805
    Telephone:  703-734-4334
    Facsimile:  703-734-4340
    mary.zinsner@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that a true and correct copy of the foregoing was thereby sent via electronic mail to the following:

> Steven Scott Biss
> P.O. Box 592
> Richmond, VA 23219
> Telephone:  (804) 861-8733
> Facsimile:  (202) 318-4098
> Email: stevenbiss@earthlink.net
>
> *Counsel for Marvin T. Broyhill, III*

>        Jon S. Hubbard
> David N. Anthony
> Virginia State Bar No. 31696
> Jon S. Hubbard
> Virginia State Bar No. 71089
> Timothy J. St. George
> Virginia State Bar No. 77349
> *Attorneys for Bank of America, N.A.*
> TROUTMAN SANDERS LLP
> 1001 Haxall Point
> Richmond, VA 23219
> Telephone:  (804) 697-1200
> Facsimile:  (804) 698-1339
> Email:  david.anthony@troutmansanders.com
> Email:  jon.hubbard@troutmansanders.com
> Email:  tim.stgeorge@troutmansanders.com
>
> Mary Catherine Zinsner
> Virginia State Bar No. 31397
> *Attorney for Bank of America, N.A.*
> TROUTMAN SANDERS LLP
> 1660 International Drive, Suite 600
> McLean, VA  22102-3805
> Telephone:  703-734-4334
> Facsimile:  703-734-4340
> mary.zinsner@troutmansanders.com

#1970546v1