IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARVIN T. BROYHILL, III, )
Individually and on Behalf of the )
Broyhill Trust and Personal Trust, )
And the Estate of Audrey Broyhill, )
                                            )    1:10cv905 (LMB/JFA)
    Plaintiff, )
                                             )
v. )
                                             )
BANK OF AMERICA, N.A. )
    Defendant. )

## MEMORANDUM OPINION

Before the Court is defendant's Motion to Dismiss. For the reasons stated in open court and in this opinion, the Motion to Dismiss will be granted.

### I. Background

In 1969, plaintiff Marvin T. Broyhill, III ("Broyhill")'s father died, leaving a marital trust ("Broyhill Trust") for his wife Audrey. Under the terms of the trust, Audrey had the authority to assign the trust assets upon her death. In the absence of an assignment, the trust assets were to be equally divided between Audrey's then-living children, Broyhill and his sister, Deborah. After a legal dispute between Audrey and the original trustee, Bank of America was named trustee.

To reduce her estate tax liability, Audrey provided annual gifts of $10,000 to Deborah, Broyhill, Broyhill's wife, and Audrey's two grandchildren, from 1990 to 1992. In January 1992, Audrey executed a will that made Broyhill and Deborah co-

executors and divided the trust's property equally between the two siblings upon Audrey's death.

In December 1993, Audrey executed a durable power of attorney that appointed Bank of America to act on her behalf, and the Bank created a revocable personal trust ("Personal Trust") for Audrey with the Bank serving as sole trustee. Broyhill alleges that Bank of America transferred all income from the Broyhill Trust to the Personal Trust and stopped providing Broyhill with accountings of the Broyhill Trust. The $10,000 annual gifts also ceased in 1993. Broyhill alleges that Audrey's mental capacity began to decline around this time.

Broyhill alleges that Bank of America allowed his sister, Deborah, to deplete Audrey's assets. As an example, he describes how Audrey took out a $600,000 mortgage on her home and then distributed that money equally to Broyhill and Deborah. In December 1993, Audrey transferred her house to herself and Deborah as joint tenants with right of survivorship. In 1996, Audrey amended the Personal Trust, providing that if there were a mortgage on her home at the time of her death, Bank of America would pay the balance of the mortgage from the Personal Trust. Disregarding the fact that he received $300,000 from the mortgage proceeds, Broyhill argues that this arrangement allowed Deborah to obtain the home free of the mortgage. Broyhill also alleges that after Audrey moved to a nursing home in 1997, Deborah moved

into Audrey's house and sold Audrey's personal property. He complains that Bank of America permitted Deborah to "loot" Audrey's personal property and did not attempt to collect rent from Deborah. Compl. at 6.

Broyhill also alleges that Bank of America charged excessive administrative and management fees, giving as an example Bank of America charging $47,000 in administrative expenses and $42,000 in management expenses in 2001, when the trust's income was only $122,000. Broyhill also alleges that Bank of America's investments violated the prudent investor rule and were made only to generate brokerage fees.

Bank of America loaned Broyhill $100,000 in 2002, and Deborah loaned Broyhill approximately $100,000. Over Broyhill's objections, Bank of America allegedly paid off those loans from the Personal Trust.

Broyhill argues that Bank of America denied his requests for accountings and other documents, both before and after Audrey's death, but admits he obtained an accounting of the Broyhill Trust from the Circuit Court of Arlington County in the fall of 2002.

Audrey died on April 4, 2003. Bank of America distributed the remaining trust assets in January 2004. Broyhill received approximately $523,300 from Audrey's estate and Deborah received approximately $1.623 million, which included the house she jointly owned with Audrey, according to the tax return for

Audrey's estate filed on December 30, 2003. Broyhill alleges that the Bank distributed an additional $102,316.68 to Deborah on January 16, 2004 when it paid off Deborah's loan to Broyhill, and that on January 29, 2004, the Bank provided Deborah with $271,301.83 in securities. Pl.'s Resp. and Mem. in Opp. to Def.'s Mot. to Dismiss at 9.

On July 17, 2008, Broyhill filed a six-count complaint against Bank of America in the Circuit Court for the City of Richmond.[1] Broyhill took a nonsuit on July 15, 2009. On January

---

[1] The allegations in the complaint includes:
Count I: Breach of fiduciary duty: in which Broyhill alleges that the Bank of America breached duties to act in good faith regarding the interests of Broyhill, the trusts, and Audrey's estate; breached its duty to maximize profits; and failed to disclose important information.
Count II: Constructive fraud: in which Broyhill alleges that the Bank of America fraudulently engaged in acts of self-dealing as trustee, reducing the Broyhill Trust's value. In his Opposition to the Motion to Dismiss, Broyhill agreed to move to dismiss this claim, which will not be discussed further in this opinion.
Count III: Negligence: in which Broyhill alleges that the Bank of America breached the duty of care that it owed the trusts and the estate by failing to make annual gifts to reduce estate tax liability and by purchasing unsuitable securities.
Count IV: Breach of contract: in which Broyhill alleges that the Bank of America breached its trust agreements by breaching its fiduciary duty and acting fraudulently and negligently.
Count V: Conversion: in which Broyhill alleges that the Bank of America engaged in conversion by transferring money from the Broyhill Trust to the Personal Trust and charging high administrative fees.
Count VI: Accounting, surcharge, and falsification of assets: seeks an accounting of the trusts' income from 1993 through 2004, and a court order directing the Bank of America to disgorge excessive management and administrative fees, brokerage fees, and unlawful distributions to Deborah.

7, 2010, Broyhill filed a new complaint in the Circuit Court for the City of Richmond, alleging the same six counts as were in the first complaint.

Broyhill filed the complaint in his name and also on behalf of the Broyhill Trust, the Personal Trust, and Audrey's estate. Broyhill seeks, among other relief, compensatory damages of at least $2.5 million, punitive damages, an accounting, interest, costs, and attorney's fees.

On July 27, 2010, Bank of America properly removed the case to federal court under diversity jurisdiction. On August 13, 2010, the case was transferred from the Richmond Division to the Alexandria Division, pursuant to 28 U.S.C. § 1404(c).

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court must accept all of a complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. Battlefield Builders, Inc. v. Swango, 743 F.2d 1060, 1062 (4th Cir. 1984). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege enough facts "'to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard requires well-pleaded facts that establish "more than the mere possibility

of misconduct." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

### III. Discussion

Bank of America argues that all counts should be dismissed because they are barred by the statute of limitations and laches. In addition, defendant argues that Broyhill lacks standing to assert claims on behalf of the trusts and Audrey's estate; fails to plead sufficient factual allegations to support any plausible claim for relief; and has failed to plead sufficient facts entitling him to punitive damages.

#### A. Standing to assert claims on behalf of the trusts and Audrey's estate

Bank of America argues that Broyhill does not have standing to assert claims on behalf of either the trusts or Audrey's estate because only trustees - and not mere beneficiaries - can sue on behalf of trusts. See Busman v. Beeren & Barry Invs., LLC, 69 Va. Cir. 375, 377 (Fairfax County 2005) ("a trust beneficiary may not maintain an action against a third party alleged to have converted trust property") (citing Poage v. Bell, 35 Va. 604, 606-07 (1837)). Broyhill does not address this argument in his Opposition brief, and did not refute it during oral argument.

Because Broyhill is neither a trustee nor an executor, he only has standing to sue in his own name and not on behalf of the trusts or Audrey's estate. Accordingly, any claims he makes on behalf of the trusts or Audrey's estate will be dismissed.

B. Failure to state a claim

Bank of America argues that Counts I, III, IV, and V are barred by the applicable statute of limitations and that Count VI is barred by the equitable defense of laches.

Broyhill filed his first complaint on July 17, 2008 and took a nonsuit on July 15, 2009. A plaintiff in Virginia may refile claims within six months of taking a nonsuit without causing the statute of limitations to run. Va. Code § 8.01-229(E). Broyhill filed his second complaint on January 7, 2010, less than six months after taking a nonsuit. Therefore, the statutes of limitations for all of the counts were tolled as of July 17, 2008, when the first complaint was filed.

Broyhill argues that some – if not all – of his claims should be governed by the five-year statute of limitations under the Virginia Uniform Trust Code, Va. Code § 55-550.05(c) ("VUTC"). The VUTC states that "a judicial proceeding by a beneficiary against a trustee for breach of trust shall be commenced within five years after the first to occur of: (1) The removal, resignation, or death of the trustee; (2) The termination of the beneficiary's interest in the trust; or (3) The termination of the trust." Broyhill argues that he filed his claims within five years of the November 2004 termination of the Broyhill Trust.

Broyhill's argument fails because the VUTC does not affect

7

statutes of limitation that began to run before the VUTC went into effect on July 1, 2006. Va. Code § 55-551.06(B) ("If a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before July 1, 2006, that statute continues to apply to the right even if it has been repealed or superseded."). Because all of Broyhill's claims arose before July 1, 2006, he cannot avail himself of VUTC's five-year statute of limitations. Instead, the statute of limitations that applies to each of his causes of action must be used.

i. Breach of Fiduciary Duty (Count I)

Although the Code of Virginia does not explicitly provide a statute of limitations for breach of fiduciary duty, the Fourth Circuit has held that such claims are governed by Va. Code § 8.01-248, which provides a two-year statute of limitations for claims where a limitations period is not specified. See Singer v. Dungan, 45 F.3d 823, 827 (4th Cir. 1995) ("We have ruled repeatedly that under Virginia law a breach of fiduciary duty claim is subject to the . . . limitations period of section 8.01-248."). Broyhill attempts to avoid this two-year limit by arguing that the fiduciary duty claim involves injury to property, which would trigger the five-year statute of limitations period provided for in § 8.01-243(B). That argument ignores the binding precedent in Dungan. Accordingly, the two-

year limitations period applies.

Broyhill argues that Bank of America had a "continuing fiduciary relationship" with Broyhill until November 2004. See Wood v. Carwile, 231 Va. 320, 326 (1986) ("where there is an undertaking which requires a continuation of services, the statute of limitations does not begin to run until termination of the undertaking.") (internal quotation marks and citations omitted). Under Broyhill's "continuing undertaking" argument, the statute of limitations for a breach of fiduciary duty claim did not begin to run until November 2004. However, that argument, even if accepted, would not save this claim because Broyhill filed his complaint in 2008, approximately two years too late.

Broyhill also argues in his Opposition brief that Bank of America should be estopped from asserting the statute of limitations because it "obfuscated and obstructed Broyhill at every turn." Pl.'s Resp. and Mem. in Opp. to Def.'s Mot. to Dismiss at 10. The estoppel argument fails because Broyhill does not specify exactly what Bank of America did to obfuscate or obstruct him and does not provide any dates for this alleged misconduct. Broyhill admits that any obstruction of his access to the Personal Trust ceased in May 2003, when the Bank gave him a copy of the Personal Trust Agreement. See Pl.'s Resp. and Mem. in Opp. to Def.'s Mot. to Dismiss at 4, n.5. That date is more

than five years before the complaint was filed. Because the two-year statute of limitations applies to breach of fiduciary duty, and plaintiff has not alleged any conduct by defendant falling within that two-year period, the Court will dismiss Count I as time-barred.

ii. Negligence (Count III)

The Code of Virginia does not provide a statute of limitations for negligence. Broyhill argues that Virginia's five-year limitations period for injury to property should apply to the negligence claim. Va. Code § 8.01-243(B). Bank of America counters that the negligence claim is nothing more than an extension of the breach of fiduciary duty count and therefore the two-year statute of limitations should apply.

The caselaw on this question supports defendant's position that the two-year statute of limitations should apply. See Rollins v. Branch Banking & Trust Co. of Va., 56 Va. Cir. 147, 150 (Roanoke 2001) ("To the extent that the claim for negligent administration is based on the trustee's failure to use reasonable care in the management of the trust, it is subsumed in the breach of fiduciary count."). Broyhill's negligence claim merely repeats his allegation that Bank of America breached a fiduciary duty and does not plead additional facts or legal arguments that would support application of the five-year statute of limitations for property damage.

In an attempt to distinguish his negligence claim from the breach of fiduciary duty claim, Broyhill argues that his negligence claim arises under Va. Code § 26-5, which he states "creates a cause of action against any 'fiduciary' or agent who 'by his negligence or improper conduct' loses funds." Pl.'s Resp. and Mem. in Opp. to Def.'s Mot. to Dismiss at 15, fn. 11. Broyhill misrepresents the plain text of the statute. Va. Code § 26-5 does not create a separate cause of action for negligence; rather, it merely states how damages are measured in claims against fiduciaries, by providing that "[I]f any fiduciary mentioned before in this chapter, or any agent or attorney at law, shall, by his negligence or improper conduct, lose any debt or other money, he shall be charged with the principal of what is so lost, and interest thereon, in like manner as if he had received such principal." This statute does not create a separate cause of action.

Broyhill fails to allege any negligent conduct on or after July 17, 2006, two years before he filed his first complaint. Moreover, he has not demonstrated that his negligence claim differs from his breach of fiduciary duty claim. Therefore, the Court will dismiss Count III as time-barred.

iii. Breach of Contract (Count IV)

To survive a motion to dismiss, a breach of contract claim must allege both the existence of a contract and a breach of a

specific provision of that contract. See Ruffolo v. Oppenheimer & Co., No. 90 Civ. 4593, 1991 U.S. Dist. LEXIS 1485 (S.D.N.Y. Feb. 5, 1991). ("With respect to the contract claim, plaintiff's failure to plead the terms of the agreement alleged to have been breached, renders the claim defective."). Because Broyhill lacks standing to sue on behalf of the trusts or the estate, he only has standing as a trust beneficiary.

Although Broyhill provides few details to support this claim, it appears that he is suing as a third-party beneficiary for a breach of trust. See Rollins, 56 Va. Cir. at 151 ("A trust instrument is not a contract. However a beneficiary to a trust may bring a cause of action against a trustee for breach of the trust agreement much in the same manner a third party beneficiary could bring a breach of contract action against a party to the contract."). However, the complaint does not sufficiently allege that "the trustee breached one or more of the terms expressed in the agreement or terms that could be inferred or implied by the language of the agreement." Id. Instead, the complaint merely states that the defendant's actions "constitute a breach of the Broyhill Trust and Personal Trust agreements." Compl. at 11. This conclusory allegation is not sufficient to meet the requirement that a plaintiff plead "more than the mere possibility of misconduct." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Moreover, as Bank of America correctly points out, this claim is just another version of plaintiff's breach of fiduciary duty claim, which is time-barred. Accordingly, the breach of contract claim (Count IV) will be dismissed as time-barred.

    iv. Conversion (Count V)

"A person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." Simmons v. Miller, 261 Va. 561, 582 (2001).

Broyhill argues that he had a vested remainder interest in the trust assets and therefore had an immediate right to possess the property. Bank of America counters that to have standing to raise a conversion claim, the plaintiff "must have actual possession of the property or a right to immediately take possession of the property." Gillespie v. Seymour, 14 Kan. App. 2d 563, 572 (Kan. Ct. App. 1990). Bank of America argues that because the Broyhill Trust gave Audrey the ability to assign the assets, Broyhill had no immediate right to any of the assets of the Broyhill Trust. Similarly, because the Personal Trust was revocable, Broyhill had no immediate property interest in that trust. In other words, all of Broyhill's interests in the trusts were contingent and he had no immediate claim to the trust assets when the alleged conversion occurred. Simmons makes clear that a

conversion claim in Virginia must, at minimum, affect the plaintiff's rights to the goods. Therefore, the Court will only consider Broyhill's conversion claim insofar as it alleges that Bank of America personally harmed his interests.

Broyhill and Bank of America agree that the five-year statute of limitations for property damage, Va. Code § 8.01-243(B), applies to the conversion claim. Therefore, only property damage occurring after July 17, 2003 can be the grounds for this count.

Broyhill incorrectly argues that conversion occurred when Bank of America distributed the trust assets to Deborah in January 2004. To the contrary, if a conversion occurred, it was when Bank of America allowed the changes to the trusts and Audrey's estate, all of which occurred in or before 1996, well outside of the five-year limitations period. It was those changes that directly changed Broyhill's rights to the trusts' and estate's assets. The distributions of the assets in Audrey's estate in 2004 were payments made under Audrey's will (which Broyhill has not attached) that was executed approximately a decade earlier without any objections from Broyhill. Broyhill does not plead a single alleged act of conversion that occurred within the five years before he filed his complaint. Therefore, the conversion claim (Count V) will be dismissed as time-barred.

v. Accounting, surcharge, and falsification of assets
(Count VI)

Bank of America argues that Broyhill's demand for an accounting in equity under Va. Code § 8.01-31 is barred by the equitable doctrine of laches. Laches is "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." Princess Anne Hills Civic League v. Susan Constant Real Estate Trust, 243 Va. 53, 58 (1992). To establish laches, Bank of America must demonstrate that Broyhill unreasonably delayed filing his claim, and that the delay is prejudicial to Bank of America.

Bank of America has demonstrated that Broyhill unreasonably delayed filing this lawsuit. At oral argument, Broyhill's counsel acknowledged that Broyhill is a knowledgeable businessman. By the allegations in his complaint, Broyhill admits he began to be concerned about his mother's mental state in 1992. Yet, there is no evidence in the record or allegation in the complaint that he pursued those concerns with the defendant or anyone else. Moreover, even with these concerns, Broyhill accepted $300,000 in proceeds from the mortgage of his mother's home and at least two $100,000 "loans," which he did not have to repay personally. By 1996, Broyhill was aware of his mother's mental condition and the changes to her estate. Yet Broyhill is unable to provide a single reason why he waited more

than a decade to challenge those changes.

Bank of America also demonstrated that granting this equitable remedy would cause undue prejudice. Broyhill's claims focus primarily on conduct in the early-to-mid 1990s. Requiring the defendant to track down such old records would be burdensome and the ability to find employees and other witnesses who remember those transactions in detail would be especially burdensome.

Equitable accounting also is inappropriate in this case because Broyhill concedes that he obtained an accounting of the Broyhill Trust in 2002 from the Circuit Court of Arlington County. Broyhill has not established whether that accounting was defective or why he needs a second accounting. He also has not explained why he waited six years after that accounting to seek a new one. Broyhill is not only seeking an equitable accounting under this count – he seeks surcharge, disgorgement of management and administrative fees, and return of allegedly unlawful distributions. As defense counsel pointed out at oral argument, Broyhill is apparently attempting to use the equitable accounting count to plead claims that are otherwise barred by statutes of limitations. Therefore, the Court will dismiss the equitable accounting claim (Count VI) under the doctrine of laches.

## IV. Conclusion

For the reasons stated above, defendant's Motion to Dismiss

[Dkt. No. 4] will be granted as to all counts, by an order to be issued with this opinion.

Entered this 6th day of October, 2010.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge